■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES VINCENT MONAGHAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered November 28, 1966, convicting him of assault in the second degree with intent to commit sodomy, upon his plea of guilty in 1958, and sentencing him to imprisonment for one to five years. The appeal brings up for review two orders of said court, one dated March 18, 1966 which denied defendant's motion to dismiss the indictment for lack of prosecution and one dated April 22, 1966, which granted his motion for reargument and, upon reargument, adhered to the original decision. Appeal from order dated March 18, 1966, dismissed as academic. That order was superseded by the order granting reargument. Appeal from so much of the order dated April 22, 1966 as granted reargument dismissed. Defendant was not aggrieved thereby. Judgment and so much of the order dated April 22, 1966 as adhered to the original decision denying defendant's motion to dismiss the indictment reversed, on the law and the facts; motion granted; indictment dismissed; and defendant discharged. On October 27, 1958 defendant was indicted for sodomy in the first degree (two counts), sodomy in the second degree, assault in the second degree with intent to commit sodomy, carnal abuse of a child as a felony, and endangering the life or health of a child (with respect to impairment of the child's morals). On November 20, 1958, he pleaded guilty to assault in the second degree with intent to commit sodomy, in satisfaction of the entire indictment, and was released on bail

to await sentencing on January 5, 1959. He failed to appear for sentence on the appointed date and on January 12, 1959 his bail was forfeited and a bench warrant was issued. In a telegram dated September 10, 1959, the Police Department of Houston, Texas, notified the District Attorney of Queens County that defendant was in custody in Texas, awaiting trial on "several" forgery charges. On September 11, 1959, the Chief Clerk of the former County Court of Queens County wrote a letter to the Harris County (Texas) Sheriff's Office in Houston, in which he stated that a warrant for defendant's arrest had already been forwarded to the authorities in Texas, that "there shouldn't be any difficulty" in extraditing defendant and that he "would appreciate  *  *  * [the Sheriff advising him] as soon as possible so that our Warrant Officer may proceed to your jurisdiction to apprehend the defendant." In a letter dated September 14, 1959, the Houston Police Department advised the Chief Clerk that the Queens warrant had been placed as a detainer against defendant, that defendant had not yet been brought to trial and that the Clerk would "be notified  *  *  *  when  *  *  *  [to] come get this subject." No formal demand for extradition was made at that time, despite the fact that Texas, although not a party to the uniform Agreement on Detainers (see Code Crim. Pro., § 669-b), is a signatory to the uniform Criminal Extradition Act (see Vernon's Texas Statutes Ann., Code of Criminal Procedure, vol. 5, art. 51.13, § 19; see, also, Code Crim. Pro., § 832), pursuant to which the Governor of Texas has discretion to surrender, upon demand of the executive authority of another State, a person against whom "a criminal prosecution has been instituted  *  *  *  under the laws of  *  *  *  [Texas] and is still pending" at the time of the demand. By letter dated November 13, 1959, the Texas Sheriff's Office notified the Chief Clerk that defendant had been convicted of six counts of forgery; that he had been sentenced to three years on each count, the sentences to run concurrently; that he was to be released to the custody of the Texas Department of Corrections "as soon as possible"; and that the Queens County warrant would be forwarded to the Chief of the Bureau of Records and Identifications of the Texas Department of Corrections. Defendant completed his term and was released from custody on June 20, 1961; however, no attempt at extradition was made at that time. Defendant apparently remained at large in Texas until January 18, 1962, when he was received anew by the Texas Department of Corrections to serve an eight-year sentence for sodomy. The Queens trial court was notified of defendant's reincarceration by the Texas authorities in a letter dated April 20, 1962, which also stated that defendant's minimum discharge date would be August 29, 1966. On December 12, 1965, defendant, writing from his Texas cell, requested the Supreme Court in Queens County to vacate the Queens warrant that had been lodged against him in Texas. He addressed a similar request to the District Attorney of Queens County in a letter dated December 15, 1965. The District Attorney then wrote the Texas authorities, indicating that he desired defendant's return to Queens pursuant to the uniform Agreement on Detainers. Such an attempt was, of course, doomed to failure since Texas was not a party to that Agreement. In March, 1966, while still incarcerated in Texas, defendant made a *pro se* application to dismiss the "detainer", which the Criminal Term in Queens County treated as a motion to dismiss the indictment for failure to prosecute. That motion was denied; and, although reargument was subsequently granted, the court adhered to its original decision. Following the completion of his second Texas term, defendant was returned to Queens County and was sentenced on November 28, 1966 on his 1958 guilty plea. Accordingly, there was an interval of about eight years between his plea and the imposition of sentence. This State has a strong

policy against unreasonable delays in criminal causes, hence, an "extremely long and unreasonable" delay in pronouncing sentence operates to deprive the court of jurisdiction to do so (*People ex rel. Harty* v. *Fay*, 10 N Y 2d 374, 379; see, also, *People* v. *Newcombe*, 18 A D 2d 1087). Since defendant jumped bail and the Queens authorities did not learn of his whereabouts until September 10, 1959, the delay up to that point is attributable solely to defendant's conduct and may not be charged against the People (cf. cases collated in 3 A. L. R. 1002, 1017; 97 A. L. R. 800, 811). However, the delay that followed might well have been avoided had the Queens authorities made a formal attempt to extradite defendant prior to his sentencing on the Texas forgery charges, at which time the Governor of Texas had discretion to honor such a request. Perhaps such a request, even if timely made, would have been denied; nevertheless, the failure to even make such a formal request renders the seven-year delay that followed unreasonable (see *People* v. *Winfrey*, 20 N Y 2d 138). Under the circumstances, we are constrained to hold that the extremely long delay herein operated to divest the court of jurisdiction to sentence defendant (*People ex rel. Harty* v. *Fay, supra*; *People* v. *Newcombe, supra*). We have considered defendant's contention that his guilty plea was improperly accepted and find it to be without merit. Rabin, Acting P. J., Martuscello, Latham, Kleinfeld and Benjamin, JJ., concur.