**STATE of Delaware**

v.

**George D. CUNNINGHAM, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted July 6, 1979.
Decided Aug. 2, 1979.

Francis A. Reardon, Deputy Atty. Gen., for State.

Joseph A. Hurley, Paul, Lukoff & Hurley, Wilmington, for defendant.

O'HARA, Judge.

Defendant Cunningham has moved to dismiss the instant prosecution on the grounds of denial of procedural due process and the right to a speedy trial. Counsel have stipulated to certain of the pertinent facts, as follows:

Defendant was tried in this Court on June 22, 1971 and found guilty of possession with intent to deliver heroin and possession with intent to deliver cocaine, the verdict being entered on July 28, 1971. Sentencing[1] was scheduled for November 16, 1971 but defendant, who had been duly notified, failed to appear and a capias was issued for his arrest.

On September 21, 1973, the capias was returned and the defendant released on his own recognizance, with sentencing rescheduled for January 18, 1974. The defendant again failed to appear and a second capias was issued.

In July, 1975, the defendant was arrested in Chester, Pennsylvania on an alleged drug law violation and incarcerated in default of bond. Upon learning of defendant's incarceration, the Attorney General of Delaware filed a detainer under 11 Del.C. § 2501, et seq. Defendant refused to waive extradition and remained in prison in default of the bond set for the fugitive warrant. During the period of approximately six months that defendant was incarcerated in Pennsylvania, the State of Delaware failed to perfect its rendition. As a result the detainer was dismissed and defendant was released from the bond set on the Delaware warrant. The State has given no explanation accounting for this action. In January, 1976, defendant was released from prison, the Pennsylvania charges having been dropped. Until his arrest in July, 1975, defendant had been employed by the Scott Paper Company, in Pennsylvania, but lost his job as a direct result of his incarceration.

Although the State disputes the accuracy of defendant's contentions, defendant would testify that he believed, at the time the Delaware detainer was dismissed, that the prosecution based upon his 1971 conviction was forever discontinued.

Following his release, defendant returned to Chester and has resided there since 1976. He has established "significant roots" in the community and has worked with local social clubs and community activities.

Finally, from the time of the dismissal of the Delaware detainer until defendant's recent arrest in Delaware, the State has made no effort to return the defendant for sentencing. Defendant was arrested on the still outstanding capias, when he was identified by Delaware police responding to a disorderly conduct complaint, for which defendant was not charged.

To append a bit of recent history, the capias was returned and executed on April 30, 1979. Sentencing has now been continued pending the resolution of defendant's motion, with defendant held in custody in default of bail.

Defendant concedes that any sentencing delay resulting from his failure to appear in Court prior to his arrest in July, 1975 is not attributable to the State. The present motion is based on the unexplained failure of the State to follow through on the return of

---

1. Under the present law, 16 Del.C. § 4751, severity of sentence would depend upon whether defendant is addicted to narcotic drugs. Defendant, if an addict, could be sentenced to 0–25 years, plus fines. If not addicted, the sentence is 30 years without benefit of parole.

defendant to Delaware since the July, 1975 arrest, resulting in a delay of over three years.

Criminal Rule 32(a) requires that sentence be imposed without unreasonable delay. Although this Rule has not been construed in a reported decision by a Delaware Court, the same provision appears in Rule 32(a) of the Federal Rules of Criminal Procedure. Federal cases interpreting the rule have relied on the Sixth Amendment guarantee of speedy trial and due process standards to determine when delay in sentencing is "unreasonable." Defendant relies on these cases and upon the speedy trial provision of the Delaware Constitution:

> "In all criminal prosecutions, the accused hath a right to . . . a speedy and public trial by an impartial jury;" Del. Const., Art. I, § 7 [2]

### APPLICABILITY OF SPEEDY TRIAL

There has been no final answer from the U.S. Supreme Court as to whether the Sixth Amendment speedy trial guarantee applies to the interval between conviction and sentencing. *Johnson v. State*, Del. Supr., 305 A.2d 622, *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3072, 37 L.Ed.2d 1045 (1973). The Court was willing, in *Pollard v. U. S.*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), to assume for the purposes of argument that sentence is part of trial under the Sixth Amendment. This approach has been followed by a number of Courts, *see, e. g., Johnson v. State*, supra; *Erbe v. State*, infra. In *Brady v. Superintendent*, 4th Cir., 443 F.2d 1307 (1971), the Court found "strong indications" [3] that the speedy trial right applies to the interval between conviction and sentencing, but held that any consequences of a violation were insufficient to justify release from custody in that case.

The Alaska Supreme Court, in *Gonzales v. State*, Alaska Supr., 582 P.2d 630 (1978), recently held that sentencing delays were governed by both Federal and State constitutional guarantees of speedy trial, but found no violation on the record before it. The Court did discuss the interests protected by the speedy trial right as listed in *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (concurring opinion, Brennan, J.), and found five of the seven applicable by analogy to sentencing.

The Supreme Court of Louisiana disagreed, holding that the speedy trial right is inapplicable to the sentencing stage of a prosecution. *State v. Johnson*, La.Supr., 363 So.2d 458 (1978). The Louisiana Court considered three of the interests found applicable to sentencing in *Gonzales v. State*, supra, (undue and oppressive incarceration, anxiety and concern accompanying accusation, and impaired ability to present a defense), but reached an opposite result.

> "Obviously, the evils of lengthy pretrial detention and impeded trial defenses are irrelevant after conviction. The factor of anxiety of the accused refers to a presumptively innocent defendant who must live under a cloud of suspicion until he has an opportunity to establish his innocence." 363 So.2d at 461.

In contrast to this narrow analysis, the Alaska Court examined the post-trial, presentencing analogues of the Speedy Trial concerns, and found ample potential for prejudice.

> "Sentencing delays may cause undue and oppressive incarceration. Should the defendant be unable to make bail, prolonged imprisonment pending sentencing may be compensable by credit against time served; however, this remedy does little good to the person whose conviction is flatly overturned on appeal. Until sentence is imposed the defendant may not

---

2. This provision is virtually identical to the speedy trial clause of the U.S. Constitution, which was held in *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) to be a fundamental right made applicable to the states through the due process clause of the Fourteenth Amendment.

3. For example, dicta in *U. S. v. Sherwood*, 10th Cir., 435 F.2d 867 (1970), that extreme delay in sentencing may cause a deprivation of the speedy trial right.

apply for pardon, commutation or reduction of sentence.[4] Also, prompt sentencing may reduce the opportunity for delays designed to chill the legitimate exercise of First Amendment freedoms by unpopular defendants. Witnesses may become unavailable should re-trial be necessary, or in support of a defendant's plea for a lesser sentence." 582 P.2d at 633.

The *Gonzales* opinion also refers to the deterrent aspect of prompt penal sanctions, and raises the possibility that a convicted defendant, while free on bail awaiting sentencing, may commit a crime during the delay. Finally, that Court discusses the public interest in prompt and certain punishment as part of the fair and expeditious administration of justice, which is also served by penalizing official abuse.

To the extent that the applicability of the Speedy Trial provisions to sentencing delay is to be determined on a case by case basis, it is noted that many of these concerns alluded to in *Gonzales* apply to the facts presently before the Court.

It should be noted that at least one Court has found a constitutional violation based on these principles. In *Juarez-Casares v. U. S.*, 5th Cir., 496 F.2d 190 (1974), sentence was vacated and the defendant was released from custody due to extreme delay in sentencing under the Sixth Amendment guarantee and Rule 32(a).

This Court, on balance, is persuaded that correct approach to the period between conviction and sentence is to analyze the facts.

### CRITERIA

■ Passage of time alone will not bar imposition of sentence or require a defendant's discharge. *Welsh v. U. S.*, 6th Cir., 348 F.2d 885 (1965). Whether delay in completing a prosecution amounts to an unconstitutional deprivation of rights depends upon the particular circumstances. *Pollard v. U. S.*, supra. The delay must not be purposeful or oppressive. *Id.* Here there has been no showing that the delay has been purposeful. Defendant alleges that the State has negligently failed to assume its duty to complete prosecution in a timely manner. However, further inquiry is warranted to determine whether the delay has been "oppressive" and/or unreasonable.

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the U.S. Supreme Court identified some of the factors which Courts should assess in determining the merit of a denial of a Speedy Trial claim. The four factors enumerated were length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Regarding the balancing of these factors the Court commented:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." 407 U.S. at 533, 92 S.Ct. at 2193.

Although the *Barker* case involved pretrial delay, the balancing test enunciated by the Court lends itself as well to sentencing delay.

### LENGTH OF DELAY

■ The precise length of the delay in sentencing attributable to the State depends upon the choice of starting point. From the time of defendant's incarceration in Pennsylvania (and the initiation of extradition proceedings by Delaware) in July, 1975, to April, 1979, is 45 months or 3¾ years. Reckoning from defendant's release (upon dismissal of the Pennsylvania charges and the failure of Delaware to perfect extradition) in January, 1976, the period is 39 months or 3¼ years. Determination of the precise interval necessitates a judgment as to when the State should, or would, have returned defendant to Delaware. In the absence of any reliable basis to so deter-

---

4. Postconviction relief in Delaware under Criminal Rule 35, is available only after sentencing.

mine, the Court can only say that extradition should have been completed no later than January, 1976, indicating a delay of (at least) three years, three months.

■ As to the significance of this period, Mr. Justice Powell, writing for the Court in *Barker*, had this to say:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. at 2192.

The delay here, under the circumstances presented, is sufficient to provoke further inquiry. Our Supreme Court, in *Johnson v. State*, supra, held that a delay of four years in sentencing was "longer than normally permissible" and "weigh[ed] in favor of vacating the sentence." 305 A.2d at 624. Of course, the significance of the three year period is dependent upon the remaining factors. As Mr. Justice Brennan stated in his concurring opinion in *Dickey v. Florida*, 398 U.S. 30, 39, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the length of delay appears to be significant principally as it affects the legitimacy of reasons for the delay and the likelihood of prejudicial effects.

## REASON FOR DELAY

The State has offered no excuse for the failure to follow through on extradition of this defendant. It has noted that "petitioner did little to hasten his sentence by failing 'to show' on three (3) different occasions, and declining to waive extradition . ." As set out above, there is no contest as to defendant's fugitive status prior to July, 1975, and no claim of prejudicial delay during that period. Clearly, defendant waived any right to object on account of delay by failing to appear for the scheduled sentencings. However, the incarceration of defendant in Pennsylvania and the initiation

of extradition proceedings by the State changed the posture of the case.

■ The proceedings provided for under the extradition statutes are intended to be summary in nature, *Golla v. State*, Del. Supr., 159 A.2d 585, *cert. denied* 364 U.S. 841, 81 S.Ct. 78, 5 L.Ed.2d 64 (1960), and the burden of complying with the procedural requirements of the Uniform Extradition Act, 11 Del.C. § 2501, et seq., rests upon the State and not the defendant. See *Pittman v. State*, Del.Supr., 301 A.2d 509 (1973); *Beebe v. State*, Del.Supr., 346 A.2d 169 (1975).

■ The State cannot be heard to shift responsibility for the failure to complete extradition to the defendant. The Act recognizes the right of the prisoner to resist extradition and question the validity of his arrest. 11 Del.C. § 2510. Extradition is a significant interference with liberty, and the demanding State is thus required to demonstrate that such interference is justified. *Grano v. State*, Del.Super., 257 A.2d 768 (1969).[5] Defendant should not be penalized for the assertion of his right to resist extradition. *In re Watson*, Cal.Supr., 19 Cal.3d 646, 139 Cal.Rptr. 609, 566 P.2d 243 (1977). The State has made no showing that defendant's resistance would have prevented prompt extradition had the State met its burden to proceed.

On the continuum of justification for the delay, we are left somewhere between a valid reason and deliberate delay. As in *Erbe v. State*, Md.App., 276 Md. 541, 350 A.2d 640 (1976), wherein for "some inexplicable reason" case records were lost and sentencing delayed 3½ years, the State lacked diligence, but there was no implication of bad faith. However, the State failed to meet an affirmative burden to proceed, and, as suggested by Justice Brennan, delay caused by the negligent failure of the government to proceed is virtually as damaging to the interests protected by the speedy trial right as a deliberate delay. *Dickey v. State*, supra, 398 U.S. at 51–52, 90

5. In the present case, with a conviction (not merely a charge) on two counts recorded and

sentencing pending, the State faced a minimal burden to justify extradition.

S.Ct. 1564 (concurring opinion).[6] Justice Brennan indicates that the crucial question in determining the legitimacy of governmental delay may be "whether it might reasonably have been avoided—whether it was unnecessary." *Id.* 398 U.S. at 52, 90 S.Ct. at 1576.

Clearly the delay in extradition here was unnecessary, and could have been avoided by the State. Characterizing the delay as "neutral" or "inadvertent" ignores this responsibility. Negligence and overcrowded Courts were cited as examples of "more neutral" reasons in *Barker*, and these labels were applied in *Erbe*. However, the dissent in *Erbe* stated that:

> "The fact that negligence traceable to the State was responsible for the delay in petitioner's sentencing must be, and the majority recognizes, weighed against the Government." 350 A.2d at 658.

In the absence of any exculpatory explanation for the State's inaction here, this Court is compelled to the same conclusion. This case is closer to a deliberate delay than a justifiable one. As Justice Powell indicated in *Barker*, the ultimate responsibility for such circumstances must rest with the State and not the defendant.

### DEFENDANT'S ASSERTION

It is undisputed that the defendant did not come forward and demand sentencing in this case. However, whatever conclusions are to be drawn from this failure must take into account defendant's claim that he believed, upon the dismissal of the detainer in January, 1976 and his release from prison, that further prosecution based on his 1971 conviction was "forever discontinued" (to quote from the stipulation). It should further be noted that the stipulation recites the State's refusal to concede the accuracy of this "contention."

Precisely how this disputed misapprehension should enter into the balancing process is uncertain. The Court in *Barker* rejected the view that a defendant who fails to demand a speedy trial forever waives his right. But the Court cautioned that this did not mean that a defendant has no responsibility to assert the right.

> "We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.

> . . . . .

> "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* 407 U.S. at 528–529, 531–532, 92 S.Ct. at 2191, 2192–2193.

At the same time, though, the Court pointed out that its ruling placed the primary burden on the Courts and prosecutors to assure that cases are brought to trial. *Id.* 407 U.S. at 529, 92 S.Ct. 2182. The *Barker* majority cited with approval the approach to the speedy trial issue by Judge Frankel in *U. S. v. Mann*, S.D.N.Y., 291 F.Supp. 268 (1968), which contains the following comment on the duty to expedite the administration of justice:

> "The interests in maximum speed consistent with fairness, in fresh memories likely to approach full accounts of the facts, in prompt vindication and relief of the innocent, and in swift punishment of the guilty—such concerns are matters of broad public moment quite transcending the balance of personal advantage that understandably guides the steps of the individual defendant. It is commonly understood that the defendant will hesitate to disturb the hushed inaction by which dormant cases have been known to expire. [cases cited] There is no comparable ground—at least no justification—for ambivalence in the prosecutor's office about performance of the unquestioned duty to implement the right to a speedy trial." 291 F.Supp. at 274–275.

---

6. The missing element in the case of negligence is the concern to prevent deliberate misuse of the criminal justice system by public officials. *Id.*

The Court in *Gonzalez v. State*, supra, was thus persuaded that it should decline to give great weight to the defendant's failure to demand a speedy sentencing as an independent factor.

However, Courts have been willing to draw conclusions as to (lack of) prejudice from the defendant's failure to assert his rights.

"An inference that a defendant suffered no prejudice from his failure to assert the right is well-founded when a defendant is in a position to benefit from the delay.

\*　\*　\*　\*　\*　\*

"The inference of no prejudice is almost as clear in Erbe's case: he was free; he had no worries about the passage of time impairing his defense; and his conviction was certain. All he had to gain by asserting his right was time in jail. It seems fair to infer that he was not interested in hastening this eventuality." *Erbe v. State*, supra, at 647.

This approach has not escaped criticism.[7] The dissenters in *Erbe* questioned the justification for such an inference where the delay preceded, not trial, but sentencing:

"[U]nderlying *Barker* is also an assumption that if a defendant is suffering prejudice from delay he would complain by asserting his right, and conversely, that if he doesn't object to the delay he is not being prejudiced, at least when he is in a position to benefit from the postponement. While this assumption may possibly be justified before a defendant is found guilty, which was the situation in *Barker*, I think it unwarranted in a post-guilty-verdict setting. Once an accused is adjudged guilty he usually has so little to gain (starting his sentence so as to finish it sooner) and so much to lose (his money, his freedom or even his life) that no matter how much prejudice he endures while awaiting sentence he is unlikely to complain. Suppose a defendant is found guilty of a crime for which a possible punishment is death, even if he is being substantially prejudiced by the delay in sentencing it is farfetched to assume that he will climb the scaffolding, put the noose around his own neck and ask that the trap door be opened by asserting his constitutional right." 350 A.2d at 658–659.

The present case is unlike any of those cited in that the defendant's silence may be attributable to his mistaken belief that he could no longer be sentenced. Under the circumstances (and presumably, the absence of legal counsel), this cannot be said to be an unreasonable assumption by a non-lawyer. And from the defendant's point of view, such an assumption would fully explain the failure to demand sentencing during the interval between January, 1976 and April, 1979.

Even if defendant is not to be believed (the State does dispute the fact of his misapprehension), and he was aware that sentencing was still pending, the consequences of asserting his rights during this interval were serious. A reasonable inference from his silence (apart from the alleged misapprehension) would be that he preferred to endure anxiety and risk further prejudice rather than expose himself to incarceration. To conclude that defendant suffered no prejudice because he benefited from delay ignores this "Hobson's Choice" between life as a fugitive or life in prison.

PREJUDICE

Defendant's claims of prejudice are to be evaluated in light of the goals of the Sixth Amendment speedy trial right, in particular (1) to prevent oppressive incarceration, (2) to minimize the anxiety of the defendant, and (3) to limit the possibility of an impaired defense. *Barker*, supra, 407 U.S. at 532, 92 S.Ct. 2182. It is now clear that an affirmative demonstration of prejudice is not needed in order to prove the denial of the right to speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Yet it must also be recognized that,

"The discharge of a defendant for denial of a speedy trial is a drastic step, justifia-

---

7. See the citations at Note 6, 350 A.2d 658–659.

ble only when further proceedings against him would harm the interests protected by the Speedy Trial Clause. Thus it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused." *Dickey v. State,* supra, 398 U.S. at 52, 90 S.Ct. at 1576. (Brennan, J. concurring).

Having recognized that prejudice may be an essential element in a speedy trial claim, it must be said that proof of such prejudice may depend upon inferences from prosecutorial delay. However, the delay in this case was not such that prejudice can automatically be presumed without proof and the stipulated record must be scrutinized.

### 1. Incarceration

At first blush, the imprisonment of defendant for six months in 1975–76 does not seem "oppressive," given his fugitive status and conviction of record. However, this ample justification vanished when the State abandoned its effort to extradite the defendant. Given this background, followed by an interval of over three years and now a return to prison, defendant argues that "it is certainly oppressive to allow one to believe that a prosecution has abated, allow him to put the pieces of his life back together again, and then to 'pull in the reins' four years later . . . ."

### 2. Anxiety and Concern

There is some question whether the problem of uncertainty as to outcome continues to be constitutionally protected after a guilty verdict. The majority in *Erbe* seems to have concluded that the only anxiety with which the speedy trial clause is concerned is that experienced by a prisoner whose guilt has not been determined. *Id.* 350 A.2d at 648. The dissenters in that case recognized that a convicted defendant would suffer similar "pangs of mental anguish" while being kept in suspense as to sentence, so long as alternatives existed. It would seem, upon application of Speedy Trial principles to a delay in sentencing, that post-conviction, presentence anxiety is a relevant consideration in terms of prejudice.

In this case the defendant cannot consistently claim that he suffered anxiety during the time he believed that his case had terminated. Prior to his release in January, 1976, he may well have wondered at the lack of progress on his extradition. The strongest evidence of prejudice, though, would be that resulting from his present incarceration and the sudden effort to sentence him after a lapse of over three years. Defendant has been removed from the Chester community, where there is at least some indication that he was making an adjustment and a contribution. While the Court is mindful of defendant's conviction and fugitive status, it cannot ignore the circumstances of the present confinement in determining prejudice.

### 3. Impaired defense

The Court in *Barker* considered the danger of an impaired defense resulting from a delay in trial to be the most serious source of prejudice, in that the fairness of the determination of guilt is threatened. Without question, the danger of an inadequate presentation by defendant at sentencing,[8] due to delay cannot rise to the significance of an unfair trial. However, prolonged delay may unnecessarily complicate the sentencing determination, hamper the defendant's presentation of evidence in mitigation of punishment, and postpone the pursuit of postconviction remedies.

Defendant claims no particular prejudice with respect to his presentation under Criminal Rule 32. The Court notes, however, that defendant's pursuit of postconviction relief under Criminal Rule 35 cannot

8. Rule 32 provides that, *inter alia*:
"Before imposing sentence the Court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment."

commence until he has been sentenced.[9] Thus a claim via Rule 35 that his conviction was obtained in violation of state or federal law has been effectively barred up to this point.

## PUBLIC INTEREST

 The Court submits that a fifth factor, the public policy implicit in the prohibition of "unreasonable delay" in Criminal Rule 32(a), is a relevant consideration here. As pointed out by Judge Digges' dissent in *Erbe v. State*, supra, society is prejudiced when an accused is not furnished a prompt trial. *Id.* at 660. When sentence is delayed unnecessarily, the defendant and others are not impressed with the swiftness of justice, and goals such as punishment, deterrence, and rehabilitation are not served. While it must be stressed that this is not a case of official misconduct, sanction of the State's course of action here could open the door to prolonged manipulation of sentencing procedures by the State to the likely disadvantage of the accused.

## BALANCING THE FACTORS

 Having reviewed the record in the light of the four factors articulated by the *Barker* Court, plus the fifth category of public policy in light of Rule 32(a), it is now necessary to balance the factors. *First*, the delay of at least 39 months attributable to the State is sufficient to trigger further inquiry, and is entitled to some weight. *Second*, the lack of any explanation whatsoever for the failure to pursue extradition and thus sentencing must weigh heavily against the State. The delay was clearly unnecessary, and invites the assumption of prejudice. *Third*, the Court attaches relatively little significance to defendant's failure to assert his right to prompt sentencing (and his earlier refusal to waive extradition) in that (a) if defendant is to be believed, he had no reason to demand sentencing since he believed that his case was closed, or (b), if not, a knowing failure to

assert his right is at least as likely to have been a product of fear of incarceration as lack of prejudice. *Fourth*, defendant has been reincarcerated as a result of a chance identity check and faces sentencing some three years after being released on account of abandoned extradition procedures. Post-conviction remedies under Rule 35 have been unavailable, and the result of sentencing under 16 Del.C. § 4751 is as uncertain as ever. Prejudice from the delay is indicated. Although, as has been said, no automatic presumption should govern the determination of prejudice,

> "[T]he reasons for presuming prejudice from the inordinate delay relate to the difficulty of proving certain kinds of prejudice and to the policies behind the speedy trial right, and I do not think they evaporate when the verdict is rendered." *Erbe v. State*, supra, at 660. (Digges, J. dissenting).

*Fifth*, the public has been deprived of the speedy administration of punishment, contrary to the policy implicit in Rule 32(a).

In weighing these factors, the fact that defendant has been a fugitive from justice during the seven years since his conviction (except during confinement) must be considered. A crucial fact, whether he was a "conscious" fugitive during the last 3¼ years, is disputed. This disagreement complicates the considerations of prejudice and assertion of right.

Taking account of all these factors, the Court is forced to conclude that defendant was deprived of a "speedy sentencing" by a delay that was unjustified, unnecessary, and oppressive. With regard to the standard established by the Rules of this Court, the delay was "unreasonable," in the final analysis. As such, the circumstances here can readily be distinguished from those in *Johnson v. State*, Del.Supr., 305 A.2d 622, *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3072, 37 L.Ed.2d 1045 (1973). In that case a delay of similar length (four years) resulted when the State made a conscious decision to

---

9. Defendant could have, but apparently did not appeal his conviction to the Supreme Court under Supreme Court Rule 7.

postpone sentencing for reasons the Court found to be valid. While the defendant there claimed to have made some effort to have his Delaware sentence imposed while imprisoned in Virginia, he subsequently abandoned such efforts and sought to frustrate imposition of sentence. Finally, the *Johnson* record revealed no appreciable prejudice. The Court, per Chief Justice Wolcott, applied the *Barker* criteria and held that the longer than normally permissible delay was insufficient to overcome the latter three factors.

## DUE PROCESS

A holding that the speedy trial guarantees of Article I, Section 7 of the Delaware Constitution and the 6th Amendment of the U. S. Constitution encompass the right to speedy sentence is not necessary to sustain the result here. As defendant points out, an unreasonable delay in sentencing is a violation of due process, for "justice delayed is justice denied." See *Commonwealth v. Stewart*, Pa.Super., 221 Pa.Super. 1, 289 A.2d 126 (1972); *Giovengo v. Maroney*, W.D.Pa., 194 F.Supp. 154 (1961). The "without unreasonable delay" provision of Criminal Rule 32(a) implements this constitutional standard. Thus, regardless of the application of the speedy trial right, a delay in sentencing which is unreasonable violates the Rule and deprives the defendant of due process of law.

Such a course was followed in *People v. Monaghan*, N.Y.Supr.A.D., 34 A.D.2d 815, 311 N.Y.S.2d 722 (1970), wherein an extremely long delay was held to divest the Court of the power to impose sentence. The facts are quite similar to those at bar. The defendant pled guilty to an assault charge, was released on bail, and failed to appear for his scheduled sentencing. Nine months later New York was notified that defendant was in custody in Texas on several charges. New York failed to make a formal demand for extradition, and defendant was released from custody after a year

and a half. Seven months later defendant returned to jail on a Texas conviction. Almost four years later, defendant sought vacation of the New York warrant. Within a year, he was returned to New York and was sentenced some eight years after his guilty plea.

The Court recognized that the delay after defendant jumped bail and prior to his apprehension in Texas was attributable solely to his conduct and could not be charged against the State. However, the Court concluded that,

". . . the delay that followed might well have been avoided had the Queens authorities made a formal attempt to extradite defendant prior to his sentencing on the Texas forgery charges, at which time the Governor of Texas had discretion to honor such a request. Perhaps such a request, even if timely made, would have been denied; nevertheless, the failure to even make such a formal request renders the seven-year delay that followed unreasonable." 311 N.Y.S.2d at 725.

The State contends that none of the principles of procedural fairness on which *Monaghan* was based are present here. To the contrary, the same principles apply, and the facts are strikingly similar.

This Court retains the power under Criminal Rule 48(b)[10] to dismiss a prosecution where there has been unnecessary delay. In this case, the Court finds that there has been an unreasonable delay in violation of the first sentence of Criminal Rule 32 which warrants the sanction of dismissal.

For the reasons herein stated, defendant's motion to dismiss the prosecution should be granted.

IT IS SO ORDERED.

10. "(b) *Dismissal by Court*. If there is unnecessary delay in presenting a charge to a Grand Jury or in filing an information or in bringing a

defendant to trial, the Court may dismiss the indictment, information or complaint."