OPINION OF THE COURT
Michael D. Stallman, J.
This motion to dismiss asserts that a 12-year delay in imposing sentence has deprived the court of jurisdiction. Its *358 resolution rests on constitutional and jurisdictional questions of first impression.
FACTS
On April 16, 1974 defendant, then 19 years old, was sentenced to probation on his guilty plea to petit larceny. (Penal Law § 155.25.) On May 13, 1975 he pleaded guilty to a violation of probation based on his failure to report. On June 12, 1975, the tentative sentencing date, and on three subsequent occasions, the defendant appeared but his attorney did not.[1] On September 17, 1975, defendant failed to appear and a bench warrant was issued. Defendant was arrested, and brought before the Criminal Court, on three subsequent occasions: in 1977, 1981 and 1984. However, he was not returned on the outstanding warrant until November 24, 1986. Although repeatedly notified to appear, the Probation Department has not appeared. Defendant has been at liberty awaiting decision.
GENERAL PRINCIPLES
The Criminal Procedure Law requires that "[sjentence must be pronounced without unreasonable delay.” (CPL 380.30 [1].) Modeled on Federal law (cf, Fed Rules Crim Pro, rule 32), the statute reaffirms long-standing New York policy (see, People ex rel. Harty v Fay, 10 NY2d 374), while substituting a flexible discretionary standard for the prior rigid statutory mandate. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 380.30, at 152; cf., former Code Crim Pro §§ 471, 472, 717.) What constitutes unreasonable delay is not defined; neither is any consequence or remedy specified, jurisdictional or otherwise. Indeed, the statute does not use the word "jurisdiction”.
The statute’s negative wording makes clear that sentence can be postponed under reasonable circumstances. It necessarily implies both broad judicial discretion and a case-by-case determination. Nevertheless, certain generalizations can be made. A deliberate refusal to set a date for sentencing or a permanent deferral of sentence is per se unreasonable and improper. (Matter of Hogan v Bohan, 305 NY 110.) However, a "deferred sentence” — a postponement of the imposition of sentence for a reasonable purpose, for appropriate, finite *359 periods of time, is permissible; indeed, it has been held to be an inherent judicial power which cannot be legislatively abrogated. (People ex rel. Forsyth v Court of Sessions, 141 NY 288 [1894]; see generally, Evans and Stallman, Deferred Sentence: Common Law Alternative to Judge’s Dilemma, NYLJ, Nov. 22, 1982, at 1, col 2; Nov. 23, 1982, at 6, col 1; Nov. 24, 1982, at 6, col 1; Nov. 26, 1982, at 3, col 1; Nov. 29, 1982, at 4, col 1; Nov. 30, 1982, at 4, col 1.)
In contrast, "delayed sentencing” refers to passive inaction, an inadvertent or unexplained failure to impose sentence. (See, People ex rel. Harty v Fay, supra, and cases cited therein; People v Green, 40 Misc 2d 772; see generally, Annotation, 98 ALR3d 605.) Whether such a delay is reasonable or unreasonable requires both qualitative and quantitative analysis. The length of the delay alone is not dispositive: a period of time reasonable under some circumstances may be unreasonable under others. As a general proposition, the greater the length of the delay, the greater must be the objective, cumulative showing to justify it; the greater the departure from usual procedure, the greater the inference of unreasonableness which must be overcome. (See, People v Drake, 61 NY2d 359, 365-367; see also, People v Warrelman, 42 Misc 2d 783, 786.) Thus, where the delay is both protracted and unexplained, the courts will generally find it unreasonable. (See, People v Drake, supra; People ex rel. Harty v Fay, supra; People v Bliss, 17 AD2d 767; People v Newcombe, 18 AD2d 1087.) Where the delay is explained and is appropriate to the circumstances the courts generally deem it reasonable. (See, e.g., Matter of Root v Kapelman, 67 AD2d 131 [absconding defendant]; People v Randolph, 85 Misc 2d 1022 [rearrest in another State]; see also, People v Gibson, 39 AD2d 947 [failure of Probation Department to complete investigation; a questionable precedent].) If the delay is attributable to wrongdoing or negligence by the judiciary, prosecution or other law enforcement agency, it is generally deemed unreasonable per se. (See, People v Drake, 61 NY2d 359, 366, supra; People v Monaghan, 34 AD2d 815.) If, however, the delay is found to have been caused by the defendant, it should not be attributed to the State. (See, People v Valdes, 121 Misc 2d 201 [defendant absented himself from court at every opportunity]; Matter of Weinstein v Haft, 60 NY2d 625 [defendant sought repeated postponements].)
JURISDICTION
"Loss of jurisdiction” has become a term of art, a veritable *360 "buzz-word” used by the New York courts to trigger dismissal upon a finding of unreasonable delay in imposing sentence. Yet, such a result is not explicitly mandated by the statute. (See, CPL 380.30 [1].) A product of case law, the term "loss of jurisdiction” has never been legislatively or judicially defined. Neither has any case fully explained why, or under what circumstances, jurisdiction is "lost”.
The term is derived from old common-law practice. Originally, at common law, a court having criminal jurisdiction was obliged to impose sentence during the term of court in which the defendant was convicted. While the power to "respite” or "reprieve”, i.e., to defer imposition of sentence, was recognized in Elizabethan times, if a court did not affirmatively act during its term to either impose or defer sentence, jurisdiction was "lost”, i.e., its power to act on the pending case ended with the court’s term. (2 Dyer 234b [1564]; see, Evans and Stallman, op. cit, NYU, Nov. 23, 1982, at 26, col 1.) This drastic result was altered by statute, which has repeatedly extended the power of the trial court to impose sentence beyond the rigid limitation of its own term. (Former Code Grim Pro §§ 471, 472, 482; CPL 380.30.)
In New York case law, the term first appeared in the delayed sentencing context, as a passing reference, in 1887. (People v Everhardt, 104 NY 591, 598.) Not until 1961, however, did the New York Court of Appeals hold that a "long and unnecessary” failure to sentence was not only error, but resulted in a loss of jurisdiction. (People ex rel. Harty v Fay, 10 NY2d 374, 379, supra.) In Harty, the defendant successfully challenged the imposition of a prison sentence six years after plea. During the interim, the defendant was imprisoned for five years on an unrelated charge; only after parole, rearrest, and reimprisonment on a parole violation, was the subject sentence imposed on the six-year-old guilty plea. The Court of Appeals concluded that such delay violates both the defendant’s interest and the public interest in prompt, final disposition of criminal cases.
Existing law recognized that a trial court could be compelled, by mandamus, to impose sentence when it had been deliberately and indefinitely delayed. (Matter of Hogan v Bohan, 305 NY 110, supra.) Rather than extending Hogan to the passive inaction of Harty (supra), the court adopted a punitive and prophylatic rule mandating dismissal, applicable to both purposeful and inadvertent delays. (People ex rel. Harty v Fay, 10 NY2d 374, 379, supra.) It specifically limited *361 its rule to "extremely long and unreasonable delays only.” (Supra, at 379.) In 1984, the Court of Appeals reaffirmed its "loss of jurisdiction” rule but expanded its application to all delays deemed qualitatively unreasonable after consideration of the totality of the circumstances. (People v Drake, 61 NY2d 359, supra.)
Some cases have apparently used the term "loss of jurisdiction” metaphorically, meaning that dismissal is the only remedy appropriate to punish official wrongdoing and prevent its reoccurrence. Thus, while the court retains the power to adjudicate the case before it, justice requires that it not be exercised. (See, e.g., People ex rel. Harty v Fay, supra, at 379; People v Drake, supra, at 366-367; People v Warrelman, 42 Misc 2d 783, supra.)
Other cases appear to employ the term literally. For example, past tense implies that the court actually ceased to have the power to impose sentence. (E.g., People v Bliss, 17 AD2d 767, supra; People v Newcombe, 18 AD2d 1087, supra; People v Monaghan, 34 AD2d 815, 817, supra.) Some cases simply cite Harty (supra) or CPL 380.30, thus merely begging the question. (E.g., People ex rel. Accurso v McMann, 23 AD2d 936.) Other cases use contradictory wording which impedes meaningful conceptual analysis. (E.g., People v Green, 40 Misc 2d 772, 775, supra [dismissing "in the interest of justice * * * for lack of jurisdiction”].)
An examination of basic jurisdictional principles compels the conclusion that the term "loss of jurisdiction” should be understood literally. At issue here is whether this court still has in personam jurisdiction in this particular case, i.e., the power to subject this defendant to punishment.[2]
The essential substantive prerequisite for personal jurisdiction is timely notice and an opportunity to be heard. An attempt to subject a defendant to liability without such notice is a violation of constitutional due process. (US Const 14th Amend; NY Const, art I, § 6; Mullane v Central Hanover Trust Co., 339 US 306.) State law specifies the formal prerequisite for the exercise of personam jurisdiction, i.e., that notice be given in the manner specified by law. This is not a mere *362 formality; it is an "act of public power” which symbolizes, and conveys to the parties, the court’s assertion of power over the defendant. (Matter of Bonesteel, 16 AD2d 324, 326; see, City of New York v Chemical Bank, 122 Misc 2d 104, 106.) Thus, if notice is not given both by a legally prescribed method and in a manner which fairly communicates its purpose, the court cannot exercise jurisdiction. (See, Macchia v Russo, 67 NY2d 606.)
If a party serving process conceals its character, he is neither properly performing the formal, canonical act required for jurisdiction nor adequately communicating to the defendant that he is being sued. (See, Bulkley v Bulkley, 6 Abb Prac 307.) By parity of reasoning, if a party to litigation acts so as to mislead another party as to the continued pendency of an action, there can be jurisdictional consequences.
Thus, if an outstanding bench warrant is disregarded when the defendant is brought before the court on another charge, the court and the prosecution are failing to execute a formal prerequisite for resuming prosecution of the prior case. More importantly, they are communicating that the prior action is no longer pending. By so doing, they are accomplishing the opposite of that which constitutionally compatible notice seeks to accomplish. Due process must be accorded continuously throughout the course of a litigation. Notice, as a jurisdictional requirement, is a dynamic concept. Once properly given, notice need not be renewed periodically; however, if it is vitiated by the incompatible action of the court or a party, the result is necessarily a failure of jurisdiction.
CONSTITUTIONAL CONSIDERATIONS
The New York courts have regarded the right to prompt imposition of sentence as derived from statute and public policy. (See, e.g., People ex rel. Harty v Fay, supra; People v Drake, supra.) Although no New York court has so held, this right is rooted in Federal and State constitutional law.
The right to a speedy trial embraces the right to an expeditious resolution of all pretrial and posttrial proceedings. (US Const 6th Amend.) The Sixth Amendment of the US Constitution explicitly applies "[i]n all criminal prosecutions”. (US Const, 6th Amend, cl 1.) It should be interpreted to support its purpose of assuring that all phases of criminal proceedings are expeditiously resolved. (See, Dickey v Florida, 398 US 30 [concurring opn per Brennan, J., at 43-44].)
*363 Imposition of sentence is an essential element of the criminal justice process. It is the sentence, not the guilty plea or verdict, which terminates the prosecution. Without it, a convicted defendant cannot be punished; neither can he appeal. When sentence is unreasonably delayed, both the defendant and the community are arbitrarily deprived of the promptness, certainty and finality which the law seeks to guarantee.
The United States Supreme Court has not explicitly held the Sixth Amendment of the US Constitution applicable to a delayed sentencing situation. However, in 1956, it declared: "We will assume arguendo that sentence is part of the trial for purposes of the Sixth Amendment.” (Pollard v United States, 352 US 354, 361.) A majority of Federal Circuit Courts of Appeal have so held, as have several State high courts. (United States v Tortorello, 391 F2d 587 [2d Cir]; United States v Campisi, 583 F2d 692 [3d Cir]; Juarez-Casares v United States, 496 F2d 190 [5th Cir]; Welsh v United States, 348 F2d 885 [6th Cir]; Tinghitella v State of California, 718 F2d 308 [9th Cir]; Perez v Sullivan, 793 F2d 249 [10th Cir]; in accord, Brady v Superintendent, 443 F2d 1307 [4th Cir; dicta]; United States v Nunn, 435 F Supp 294 [ND Ind]; United States ex rel. Ford v Yeager, 287 F Supp 347 [NJ]; Gonzales v State, 582 P2d 630 [Alaska]; State v Cunningham, 405 A2d 706 [Del]; State v Fennell, 218 Kan 170, 542 P2d 686; Cessna v Commonwealth, 465 SW2d 283 [Ky]; Reed v State, 295 A2d 657 [Me]; Erbe v State, 276 Md 541, 350 A2d 640; Commonwealth ex rel. Holly v Ashe, 368 Pa 211, 82 A2d 244; State v Sterling, 23 Wash App 171, 596 P2d 1082.) These cases are not only based on the same policy as the New York cases, they apply much the same sort of qualitative case-by-case analysis. Thus, the absence of an explicit constitutional holding by the New York Court of Appeals does not mean the right to prompt sentencing is not constitutionally rooted; rather, until now it has not been so recognized in New York.
Since the Speedy Trial Clause of the Sixth Amendment of the US Constitution is applicable to the States through the Fourteenth Amendment of the US Constitution (Klopfer v North Carolina, 386 US 213) any speedy trial violation caused by unreasonable sentencing delay is automatically a due process violation. However, a sentencing delay can constitute an independent violation of both the Federal and State Due Process Clauses in either of two ways. (US Const 14th Amend; NY Const, art I, § 6.)
*364 First, the circumstances of the delay, including the nature of the official conduct, can be such a gross departure from accepted norms as to offend fundamental standards of fairness. (See, Welsh v United States, supra; Tinghitella v California, supra; see, People v Winfrey, 20 NY2d 138, 143 [Breitel, J.; pretrial delay as independent due process violation]; in accord, Smith v Hooey, 393 US 374, 383 [concurring opn per Harlan, J.].)
Second, the length and circumstances of the delay could have created a situation where the defendant no longer had objective notice of a pending prosecution. To impose sentence on an ostensibly abandoned case could be grossly unjust, especially if the defendant has relied on its apparent abandonment and ordered his life accordingly, or where the passage of time has otherwise changed the defendant’s circumstances. To permit the revival of long-abandoned prosecutions could encourage discriminatory, selective enforcement and could have an impermissible chilling effect on unpopular individuals or groups.
Imposition of sentence after an unreasonable delay could well constitute cruel and unusual punishment. (US Const 8th Amend.)[3] The Eighth Amendment of the US Constitution protects against punishment which is fundamentally unfair and unnecessary to achieve a legitimate end (Estelle v Gamble, 429 US 97; Moss v Ward, 450 F Supp 591) or which is significantly disproportionate to the wrong being punished (Solem v Helm, 463 US 277). These considerations are particularly apposite to a case where the period of the delay has been much longer than the maximum permissible period of incarceration (i.e., one year) or nonincarcerative control (reinstatement of the unexpired balance of three years’ probation) which could have been imposed at the time sentence should have been pronounced on the violation at issue here. (See, Helton v State, 106 So 2d 79 [Fla].)
Furthermore, imposition of sentence after an unreasonable *365 delay offends the principle of the separation of powers. First, the sentencing court would be unilaterally extending, to a gross extent, the period of social control which the State could exercise over the defendant. It would thereby effectively increase punishment beyond the maximum prescribed by the Legislature. Second, if the court were to ignore an unreasonable prosecution-caused delay, it would be improperly surrendering inherent judicial powers to the executive branch: the power to control its calendar (see, Plachte v Bancroft, Inc., 3 AD2d 437) and the power to determine an appropriate sentence, including the time and manner of its imposition. (See, People v Farrar, 52 NY2d 302; People ex rel. Dunnigan v Webster, 14 Misc 2d 617.)
PROCEDURAL ISSUES
New York law, based on broad policy considerations, recognizes an inference that "delay inevitably results in prejudice to the defendant.” (People v Drake, 61 NY2d 359, 365, supra.) The law also recognizes sentencing as a governmental duty; therefore, while the defendant is privileged to demand that sentence be imposed, he is under no obligation to do so. (See, People ex rel. Harty v Fay, 10 NY2d 374, supra; People v Drake, supra.) Thus, when jurisdiction is questioned because sentence has not been imposed within the accustomed time frame, it is the State that must explain and justify the delay: it is the prosecution which has the ultimate burden of proof on all issues, including jurisdiction.
It is the defendant, however, who has the initial burden of going forward when sentence is first sought to be imposed. It is he who must raise the issue of unreasonable delay and a loss of jurisdiction by a motion to dismiss. First, to the extent that the court’s power to impose sentence is a function of in personam jurisdiction, it can be waived under appropriate circumstances. Second, delay alone neither constitutes proof of loss of jurisdiction nor sets up an irrebuttable presumption. The defendant must initially set forth allegations of fact tending to show that the delay was unreasonable. The circumstances should be presented with sufficient clarity and specificity, to show that the claim of unreasonable delay is a real one advanced in good faith, framed so as to be answerable by the prosecutor.[4] Given the strong, underlying considerations of constitutional law and public policy, this should not be re *366 garded as a rigid pleading requirement. Rather, the quantum of proof required on the defendant’s initial moving papers should be the bare minimum appropriate to convince the court that the motion is not pro forma. That quantum will necessarily vary from case to case. For example, where the defendant contributed to parts of the delay, he should make a showing that, his role notwithstanding, the over-all delay was unreasonable. While length of time alone is not dispositive, a showing of extreme delay, e.g., of several years, should be sufficient to meet the defendant’s initial burden of going forward.
The prosecution must then advance specific evidence which, if not disputed, would be sufficient to prove that the delay was reasonable under a totality of the circumstances. If such evidence is not proffered, the defendant’s motion should be summarily granted. If such evidence is produced and not adequately disputed, then summary denial of the motion may be appropriate. If the prosecution’s papers or the defendant’s reply raise triable factual issues not susceptible to determination on the papers, the court should conduct a hearing as to those issues. (See, Matter of Miller v Sullivan, 123 Misc 2d 1039.) At such a hearing, the principles discussed require that the prosecution have the burden of introducing proof and the burden of persuasion.[5]
APPLICATION
The defendant has adequately met his burden of going forward. The defendant’s motion to dismiss clearly sets forth[6] the basis of the relief sought, viz., the inordinate delay of nearly 12 years during which sentence was not pronounced *367 despite the defendant’s presence before the Criminal Court on three unrelated occasions. The People’s answering papers essentially concede the defendant’s factual allegations, but dispute defendant’s legal conclusions.[7] As no triable factual question is presented by the papers before the court, no hearing need be held.
The delay at issue is so extreme as to be per se unreasonable unless appropriately explained. It is utterly disproportionate both to the time necessary to determine a proper sentence and to the maximum punishment which could have been imposed. Under these circumstances, evidence of the unusual delay alone is sufficient to call jurisdiction into question. The repeated failure of the People and the court to cause the outstanding bench warrant to be executed could only be justified by proof that the defendant concealed his identity, or otherwise acted to prevent the bench warrant from "dropping” on him upon each rearrest. No such explanation or supporting evidence has been proffered.
Rather, the People argue that the defendant was responsible for the initial postplea delays, and therefore should be held responsible for the entire delay. Such reasoning is unsound. The many delays constituting the total delay at issue can be subdivided for analytical purposes into three categories: first, the postplea adjournments between May and September 1975, necessitated by the absence of defense counsel; second, the period between the defendant’s failure to appear for sentence in September 1975 and the first of his three rearrests; and third, the remaining period of approximately 10 years, including his other two rearrests. Each discreet period of delay must be analyzed independently, as would be required in a case of pretrial delay. (See, Matter of Miller v Sullivan, 123 Misc 2d 1039, 1041; cf., Barker v Wingo, 407 US 514, 531; People v Kopciowski, 68 NY2d 615.) Even if the People were correct in their claim that the first two periods of delay are ascribable to the defendant, that neither makes him responsible for the third, nor excuses the State from taking reasonable action.
*368 During the first period, defendant appeared in court for sentencing on three separate occasions. Ordinarily, a defendant’s request for an adjournment should be considered "ex-cludable time” for speedy trial purposes and prompt sentencing. (Matter of Weinstein v Haft, 60 NY2d 625.) Here, however, the court had a responsibility to notify counsel, given defendant’s indigent, incarcerated status. It cannot be determined if this was done on more than the one occasion where the court’s worksheet is so marked. If the court did not make the proper notification, the defendant cannot be blamed for the period of his attorney’s absence.
The second period of delay appears to be chargeable to the defendant. There is no claim that the defendant did not know that he was required to return to court for sentence on September 17, 1975, when a bench warrant was issued which remained outstanding for well over 11 years. Defense counsel argues that this entire span should be chargeable to the People, because there was no attempt to bring the defendant before the court to be sentenced on this case. This argument is without merit.
A bench warrant, like an ordinary arrest warrant, but unlike a search warrant, does not have a limited lifespan (CPL 1.20 [30]; 530.70; cf, CPL 120.80 [arrest warrant], 690.30 [search warrant; 10-day lifespan]). Passage of time alone does not cause a valid bench warrant to expire or become stale.
The Criminal Procedure Law, in providing for the issuance of a bench warrant, authorizes an expeditious device for police or court officers to arrest a nonappearing defendant and to return him to court. (CPL 1.20 [30]; 530.70; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 530.70, at 103.) It does not itself impose a duty on those, or other State officers, to seek out an absent defendant whose whereabouts are not known. The New York speedy trial law (CPL 30.30) provides that periods of a defendant’s absence or unavailability are not chargeable against the People provided that the People have used "due diligence” to locate him and secure his presence. (CPL 30.30 [4] [c].) When read together, a statutory duty to affirmatively seek out absent defendants can be implied.
CPL 30.30 is applicable, by its own terms, only to the period before trial. While it seeks to implement the constitutional right, it is more rigid than the Constitution requires (see, Barker v Wingo, 407 US 514, 522, supra).
*369 Thus, although this court holds that the right to sentence without unreasonable delay is a function of the constitutional right to a speedy trial, and must be judged by those standards, there is nothing to require that the rigid strictures of CPL 30.30 be extended to the postconviction period. CPL 30.30 specifically refers to readiness for trial, because it sought to eliminate extreme delays in bringing incarcerated defendants to trial. The Court of Appeals in People v Drake (61 NY2d 359, supra), by mandating a broad discretionary analysis, sub silentio rejected an extension of CPL 30.30 to the postconviction situation. Accordingly, while the court may and should consider the prosecution’s failure to seek out the defendant after conviction, the People’s failure to prove due diligence should not automatically cause the entire period of an outstanding bench warrant to be held against the People. (See, People v Nasbit, 136 Misc 2d 605 [Crim Ct, NY County, Andrias, J.].)
Conversely, the People argue that the defendant’s nonappearance in September 1975 constituted a permanent waiver of his right to a prompt sentence, thereby justifying all subsequent delays. This argument is also without merit.
While the defendant had an obligation to appear in court on the date to which his case had been adjourned with his knowledge, the defendant’s absence on the adjourned date was not a permanent consent to all ensuing delays. Many reasons, including, illness and incapacity, can be responsible for a defendant’s failure to appear; thus, absence is viewed by the courts as equivocal and nondispositive. (See, People v Parker, 57 NY2d 136 [absence permitting trial in absentia].) Continued, unexplained absence, however, has been regarded as willful where the evidence demonstrated that the defendant knew he was still wanted. (See, Matter of Root v Kapelman, 67 AD2d 131, supra.) Indeed, a failure to appear in court when required and for over 30 days thereafter is itself a separate crime. (See, Penal Law § 215.56 [bail jumping in the second degree].) It is the defendant who must come forward with evidence that his absence was unavoidable and involuntary. (Penal Law § 215.59 [affirmative defenses].) Thus, a defendant who not only fails to appear, but voluntarily stays away from court, must be deemed to have absconded; it is he who must be held responsible for any judicial delay or inaction during the period of his absence. (People v Valdes, 121 Misc 2d 201.) Here, defendant has not come forward with any explanation or excuse either for his failure to appear on September 17, *370 1975 or his failure to return voluntarily until his rearrest in January 1977. This period must be charged to the defendant.
When the defendant was rearrested on another charge in January 1977, the instant bench warrant issued in September 1975 should have "fallen”, i.e., it should have been disclosed by search of the warrant file and executed on the defendant, who then could have been sentenced. It cannot be determined why this did not happen; in any event, the reason, if any, is immaterial. The State has the responsibility of properly filing, indexing, and retrieving the warrants, which are its own process. The existence of an outstanding warrant is, or should be, within the knowledge of the court and the police.
Once a defendant is known to be in custody, the State has the constitutional duty to promptly execute the outstanding warrant. (See, Smith v Hooey, 393 US 374, supra [speedy trial]; People v Winfrey, 20 NY2d 138, supra [due process].) If the State, through the action or inaction of any of its agencies, fails to bring the defendant before it on the outstanding charge when the State knows the same defendant is in custody, the ensuing delay caused by such failure must be charged to the prosecution. (See, People v Winfrey, 20 NY2d, supra, at 141-142 [per Breitel, J.; failure to execute bench warrant on pending indictment when defendant rearrested out of State].) It is the State, by failing to pursue the open prior case, which prevented its prompt resolution. To excuse such negligence by now imposing sentence would permit the State to benefit from its own wrong.
Nonetheless, the People claim that the defendant waived his right to be sentenced on this case by not raising the issue on the intervening occasions on which he was brought before the court.[8]
Since the right to be sentenced without unreasonable delay is a function of in personam jurisdiction, it can be waived. In order to demonstrate a waiver of a constitutional right, the People must prove that the defendant intelligently and voluntarily relinquished a known right. (Johnson v Zerhst, 304 US 458, 464.)
The People have not met their burden of proving such a *371 waiver.[9] Presuming waiver from a silent record is impermissible. (Carnley v Cochran, 369 US 506, 516.) When the defendant was rearrested in 1977, and on the two subsequent occasions, the State failed to discharge its responsibility to execute the bench warrant. To argue, as the People do, that the defendant’s silence about the outstanding warrant at those times should be deemed a waiver, begs the question.
First, the defendant has no duty to speak under those circumstances; he need not remind the State of pending charges and need not demand to be sentenced. To argue otherwise is to impermissibly reassign to the defendant both a substantive duty and a procedural burden which constitutionally must rest on the People. Moreover, it would unfairly force a defendant to choose to forego one or another significant constitutional right: by silence, to forego the right to be promptly sentenced; by speaking, to forego the right to be free from self-incrimination, since discovery of an outstanding charge could result in a bail-jumping prosecution. (US Const 5th Amend.) Such a Hobson’s choice is so inherently unfair as to be a violation of due process; it is antithetical to the exercise of free will required for a genuine waiver.
Second, one can only waive a right one knows one has. When the defendant was brought before the court — indeed on three different occasions — and not called upon to answer for the outstanding warrant, the defendant was effectively given notice that the instant matter was no longer pending.[10] Only upon his fourth rearrest, in November 1986, when the warrant was finally executed, was the defendant placed on notice that the proceeding was still pending.* [11] When the State acts as if a prosecution is abandoned, it would strain credulity to require that a defendant demand to be punished. Accordingly, the entire period from defendant’s rearrest in January 1977 must be charged to the State.
*372 CONCLUSION
The delay in this case attributable to the State was unexplained and extreme, and amounted to an abandonment of the prosecution. It deprived the defendant of his right to be promptly sentenced and to thereafter resume his normal life. To impose punishment at this late date would serve no valid punitive, rehabilitative or deterrent purpose. To impose even an unconditional discharge would conceal a significant, unjustifiable failure of the criminal justice system and would thus only encourage its future repetition. Imposition of any sentence under these circumstances would violate the defendant’s constitutional rights to due process and speedy trial and would constitute cruel and unusual punishment. Since this court, like any court, lacks the power to act contrary to constitutional standards, this court concludes that the extreme delay has caused it to lose jurisdiction over this violation of probation proceeding. The proceeding is accordingly ordered dismissed.

. Although the court papers reflect multiple judicial directions that defendant’s Legal Aid Society attorney be notified, the papers show such notification only for one court appearance.

. Subject matter jurisdiction, i.e., the general power of a particular court to adjudicate all cases of a certain class (see, Gager v White, 53 NY2d 475, 485, n 2), is not at issue here. The Criminal Court has jurisdiction over all misdemeanors and related proceedings, such as the instant violation of probation proceeding. (NY Const, art VI, § 15; NY City Crim Ct Act § 31; CPL 10.30.)

. Under other circumstances, not apparently present here, the delay per se, even if sentence is not ultimately imposed, could amount to cruel and unusual punishment. US Constitution Eighth Amendment analysis has been held applicable to the presentencing context. (Johnson v Glick, 481 F2d 1028; Stevens v County of Dutchess, 445 F Supp 89) and to wrongful official inaction (United States ex rel. Schuster v Vincent, 524 F2d 153). Official conduct, whether willful or negligent, may prevent a defendant from seeking review of his conviction; a defendant could be kept in permanent fear of an inchoate punishment indefinitely suspended over him.

. Fairness to the prosecution and the public interest requires that the *366 issue be raised in formal motion papers and that the prosecution have a reasonable opportunity to investigate and answer before the matter is decided. Unlike the facial sufficiency of an accusatory instrument, for example, this issue requires a consideration of surrounding circumstances often not fully apparent from the four corners of the court papers, a consideration requiring some deliberation.

. Restated somewhat differently: There are no presumptions regarding any of the individual factual issues which may arise. However, because the burden of proof is placed on the prosecutor opposing the relief sought, not on the moving defendant, it can be said that once the ultimate issue of loss of jurisdiction is properly raised by the defendant, a rebuttable presumption arises that the delay was unreasonable and that the court lacks jurisdiction.

. While the supporting papers consist entirely of an attorney’s affirmation containing some hearsay, the salient allegations are based on verifiable knowledge gained from filed papers and official records.

. The passage of time has been prejudicial to the prosecution as well, particularly affecting its ability to respond to the instant motion. The People may well lack access to their original files, although no request was made for an additional opportunity to investigate. Accordingly, those allegations not disputed must be deemed conceded. It is indeed unfortunate that the People are unable to shed light on how this case fell between the proverbial cracks. The court cannot permit such difficulty to affect its determination since that would impermissibly alter the People’s burden of producing evidence and proving the existence of continued jurisdiction.

. The court’s own attempts to determine why the warrant never "dropped” have been fruitless and frustrating. Records are incomplete and inadequately cross-referenced, perhaps a result of the gradual computerization of the courts during the period in question. Given the constitutional interests at stake, even inadvertent ministerial error cannot be excused.

. It is not necessary for the court to consider what standard of proof is applicable to the question at issue. Since the People have not offered any evidence, the standard of proof is academic here.

. There is no evidence to indicate that the defendant knew that he was still wanted on the instant proceeding between the time the warrant should have fallen and the time at which it did fall. In any case, given the constitutional and policy reasons already stated, the defendant’s subjective knowledge should not be material.

. Given the unusual circumstances of this case, including the repeated failure of the Probation Department to appear, and the need of the attorneys for the defendant and the People to investigate, the delay in bringing this instant motion to dismiss should also not be deemed a waiver.