OPINION OF THE COURT
Edward J. McLaughlin, J.
Defendant moves to dismiss the indictments on the ground that he was denied his statutory right to have sentence imposed without unreasonable delay. Soon after being indicted, defendant agreed to cooperate with the People in exchange for a very favorable sentence promise and supplied the District Attorney’s office with information about various crimes. The People investigated that information, but the investigation did not lead to any prosecutions and defendant’s cooperation was no longer needed. Although the case was ready for sentencing, *838 26 months elapsed before the People moved to have defendant sentenced. The People cannot explain the delay, but argue that the motion should be denied nevertheless because the delay did not prejudice defendant. The court disagrees with the People’s argument and grants defendant’s motion.
Facts
On September 15, 1997, defendant was arraigned on Indictment Nos. 5740/97 and 6489/97. Each indictment charged him with forgery in the second degree and lesser, related offenses arising from two instances in which defendant took a stockbroker’s licensing exam for someone by impersonating them and signing that person’s name in the sign-in log book at the exam site. Three weeks after being arraigned, on November 7, 1997, defendant pleaded guilty to forgery in the second degree under each indictment and entered a written cooperation agreement with the New York County District Attorney’s office.
The cooperation agreement contained many standard conditions. Defendant agreed to fully and truthfully disclose to the District Attorney’s office all information and records about “any criminal conduct whatsoever” within his knowledge and to testify when needed at legal proceedings. Defendant could not commit any crimes or violations while the agreement was in effect. In exchange for that cooperation, the District Attorney’s office would not oppose defendant’s being released on reasonable bail on April 22, 1998. The District Attorney’s office also agreed to inform the court of the nature and extent of defendant’s cooperation and to recommend that he be sentenced to no more than one year for each count to be served concurrently, a recommendation that would result in a sentence of time served based upon New York City Department of Correction calculations for the time defendant would have spent in jail from September of 1997 through April 22, 1998. The agreement also gave the District Attorney’s office sole power to determine whether defendant had violated the agreement.
On April 22, 1998, defendant was released from jail on bail and began his cooperation with the District Attorney’s office. Between the date of his release and late September of 1999, defendant met several times with agents of the District Attorney’s office. He supplied information about people involved in cheating on licensing exams. In February and March of 2000, the District Attorney’s office investigated that information, a tedious and time-consuming process that required collecting records and documents from different sources. The investigator also located the people whom defendant had named and *839 investigated their background. By October of 2000, the District Attorney’s office concluded that the information supplied by defendant was unlikely to lead to any additional prosecutions.
During the time of defendant’s cooperation, the case was reassigned several times within the District Attorney’s office. The case was reassigned in March of 2000 to a second Assistant District Attorney because the original assistant left the office. The case was reassigned again in September of 2000 because the second assistant took a medical leave of absence before resigning in December of 2000. The next development in the case occurred in December of 2002 when the current assistant (not the assistant to whom the case was reassigned in September 2000) contacted defense counsel to arrange for defendant’s sentencing.
After the District Attorney’s office moved to have defendant sentenced, defendant filed the current motion. In answering that motion, the People conceded the absence of evidence that any additional investigation occurred in this case between December of 2000 and December of 2002 when the assistant contacted defense counsel. The People also conceded that the District Attorney’s office made no attempt to have defendant sentenced under the cooperation agreement. Lastly, the People also conceded that “the People can provide no explanation for this period of delay.”
Law
Under CPL 380.30 (1), a court must sentence a defendant “without unreasonable delay” after the defendant has pleaded guilty or been found guilty after trial. In People v Drake (61 NY2d 359, 364 [1984]), the Court of Appeals held that the failure to impose sentence “without unreasonable delay” causes the court to lose jurisdiction and requires that the charges must be dismissed. Moreover, the Court held that the existence of an unreasonable delay absolves the defendant of having to demonstrate actual prejudice from the delay to be entitled to dismissal of the charges: “the New York rule assumes the defendant has been prejudiced by unreasonable delay * * * He need not prove it.” (Id. at 367.)
The reasonableness of a delay depends not only on the length of the delay but the explanation for the delay. (Id. at 366.) Delays caused by legal proceedings or the defendant’s efforts to frustrate the entry of judgment are excusable and ordinarily will not be classified as unreasonable. (Id.) Delays caused by judicial or prosecutorial neglect or mistake are different; those delays are inexcusable and will be found unreasonable. (Id.)
*840 In analyzing the delay in this case, the court makes a distinction between the time before and after October of 2000. Before that time, the parties diligently fulfilled their obligations under the cooperation agreement. Defendant met with members of the District Attorney’s office from April of 1998 to September of 1999. For the next several months, the District Attorney’s office investigated that information. The investigation ended in October of 2000 after investigators concluded that defendant’s information was not likely to lead to any prosecutions. Up until this point, the sentence could not have been imposed because only after the investigation had concluded could the District Attorneys office fulfill its obligation of evaluating the sincerity and value of defendant’s cooperation. (See People v Baez, 216 AD2d 121, 121 [1st Dept 1995] [19-month delay between guilty plea and sentence was necessary to give defendant opportunity to fulfill cooperation agreement].)
But the time period after October 2000 marked the beginning of the end of this case. Once the investigation had concluded, the District Attorney’s office was obligated to promptly move the case forward for sentencing. Defendant was on bail and was readily available for sentencing upon a telephone call to defense counsel. To make an intelligent and informed sentence recommendation, the District Attorney undoubtedly was entitled to a reasonable amount of time to review the investigation and the scope and sincerity of defendant’s cooperation. Yet the record provides no evidence that the People made the appropriate preparations; the People cannot explain what happened to the case from October of 2000 until December of 2002.
In the absence of any explanation for what happened during those 26 months, it is apparent to this court that the only reason for the delay is an internal office failure of some sort. Indeed, the court recalls many times when the case was calendared but neither the file nor an assistant appeared in court. No excuse exists for assistants and their supervisors to lose track of a case or to consign it, unfinished, to the bottom of a pile somewhere. Even before the computer era, when case loads were monitored by people rather than computers, such negligence was fatal to a case, embarrassing to the prosecutor, and> an unwarranted windfall to the defendant. Whatever internal office failure occurred here provides no legal excuse for the 26-month delay in this case. (See People v Drake, 61 NY2d at 366 [delay that results from prosecutorial neglect or mistake is inexcusable and requires dismissal].) This court must now *841 decide whether the 26-month delay qualifies as a long and protracted delay that requires dismissal of the charges when unexplained.
The court concludes that the unexplained delay here requires dismissal of the charges. The court recognizes that the delay here is shorter than in cases in which appellate courts have held that an unexplained or inadequately explained delay required dismissal of the charges.* But the court finds that 26 months constitutes an extended and protracted delay that must be plausibly explained or else jurisdiction is lost and the charges are dismissed. Consequently, the charges against defendant must be dismissed unless this court accepts the People’s argument that the motion should be denied because defendant was not prejudiced by the delay.
The People argue that Drake merely established a presumption of prejudice that could be rebutted under the particular facts of a case. The People construct this argument from the Drake court’s statement that it was “inferring that delay inevitably results in prejudice to the defendant.” (People v Drake, 61 NY2d at 365.) The Court stated that it drew that inference because a delay in sentence effects important interests like the defendant’s right of appeal, eligibility for pardon and sentence commutation, the availability of witnesses for any future trial, and the public perception in prompt and certain punishment uninfluenced by irrelevant considerations. (Id.) Focusing on those interests, the People argue that Drake permits the inference or presumption of prejudice to be rebutted if those interests are irrelevant or nonexistent under the facts of the defendant’s case.
The court disagrees with the People’s argument that Drake merely created a presumption of prejudice that can be rebutted by the facts of a particular case. The court concludes that Drake was not inviting an individualized assessment of prejudice simply by discussing the many interests effected by a delay in sentencing. The court never used the word presumption in holding that a defendant need not establish prejudice, and nothing else in the opinion suggests that the facts of a particular case may rebut the general assumption that “the defendant has been prejudiced by unreasonable delay.” (Id. at 367.) The Court of Appeals surely understood at the time of Drake that *842 the different interests underlying the presumption of prejudice would not apply equally and fully in a particular case and could have carved out one or more exceptions to that general rule, yet Drake did not make any exceptions. The People have not cited a single case to support its position nor has this court found one.
Until the Court of Appeals revisits Drake to create an exception that would apply to defendant’s case, this court must abide by the unequivocal holding that prejudice is presumed when sentencing is unreasonably delayed, even though the Drake criteria for speedy sentence have little direct relevance for this defendant. Moreover, the public rightfully expects that the government will work efficiently and no public interest was served as the case lingered for 26 months within the District Attorney’s office. Accordingly, the court grants defendant’s motion to dismiss the indictments under CPL 380.30 (1).

 See People v Monaghan, 34 AD2d 815 (2d Dept 1970 [unexcused seven-year delay required dismissal]); People v Newcombe, 18 AD2d 1087 (2d Dept 1963 [unexcused four-year delay required dismissal]); see also People v Drake, 61 NY2d at 359 (39-month delay requires dismissal if delay is not excused).