**Louis GONZALES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3259.**

Supreme Court of Alaska.

July 21, 1978.

Lawrence J. Kulik, Anchorage, for appellant.

David J. Walsh, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

MATTHEWS, Justice.

Louis Gonzales was convicted of selling [1] heroin and sentenced to ten (10) years in prison. He appealed and we affirmed; however, we remanded for re-sentencing because the trial court improperly relied on the mandatory sentence provision of AS 17.10.200.[2] *Gonzales v. State*, 521 P.2d 512,

1. The sale occurred on July 20, 1972.

2. AS 17.10.200 provides in material part:

    (a) A person who violates any provision of this chapter except a provision relating to the keeping of records, upon conviction, is punishable by a fine of not more than $5,000 and by imprisonment for not less than two nor more than 10 years. For a second offense, or for a first offense where the offender has previously been convicted of a violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs, 'he offender is punishable by a fine of not more than $7,500 and by imprisonment for not less than 10 nor more than 20 years. For a third or subsequent offense, or if the offender has previously been convicted two or more times of a violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs, the offender is punishable by a fine of not more than $10,000 and by imprisonment for not less than 20 nor more than 40 years.

    .  .  .  .  .

    (d) The imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the mini-

515–516 (Alaska 1974). Our mandate was issued on April 23, 1974, but Gonzales was not re-sentenced until November 16, 1976. He again appeals, this time claiming that the delay in re-sentencing denied his right to a speedy trial and asserting a sentence appeal.

The validity of sentencing after substantial delay is a question of first impression in Alaska. Gonzales contends that sentencing delays fall within the scope of the speedy trial clause of the United States Constitution and the parallel provision of Article I, Section 11 of our Alaska Constitution,[3] and that under the circumstances of this case he was denied his right to a speedy trial.[4] We are persuaded that sentencing delays are governed by both the federal and Alaska constitutional guarantees of a speedy trial, but find no violation in this case.

The United States Supreme Court only once addressed the applicability of the speedy trial right to delays in sentencing. In *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393, 399 (1957), the court assumed without deciding "that the sentence is part of the trial for purposes of the Sixth Amendment." Several subsequent federal and state court decisions follow this approach,[5] while others expressly recognize that the right to a speedy trial includes the right to be sentenced in a timely manner.[6] At least one court has held that sentencing delays are not cognizable under the Sixth Amendment.[7]

Reluctance to firmly decide this question may be because some of the policy considerations which support the right to a speedy trial are not strictly relevant to sentencing delays. However, many of the policy considerations do apply to sentencing. The interests protected by the speedy trial right are discussed in detail in *Dickey v. Florida*, 398 U.S. 30, 39, 90 S.Ct. 1564, 26 L.Ed.2d 26, 33 (1970) (Brennan and Marshall, JJ., concurring), and may be summarized as follows:[8]

(1) Spare the accused those penalties and disabilities incompatible with the presumption of innocence which may spring from delay in the criminal process;

(2) Prevent undue and oppressive incarceration prior to trial;

---

mum imprisonment provided in this section for the offense is served.

In *Speas v. State*, 511 P.2d 130, 134 (Alaska 1973), we held that the provisions of AS 17.10.200(d) were impliedly repealed by the legislature.

**3.** The speedy trial clauses in the Sixth Amendment of the United States Constitution and Article I, Section 11 of the State of Alaska Constitution are essentially identical. They read in pertinent part:

In all criminal prosecutions, the accused shall have the right to a speedy and public trial . . . . .

In *Klopfer v. North Carolina*, 386 U.S. 213, 222–223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7–8 (1967), the United States Supreme Court ruled that the Constitutional guarantee of a speedy trial was a fundamental right made applicable to the states through the due process clause of the Fourteenth Amendment.

**4.** Gonzales also contends that Criminal Rule 32(a) creates the right to be sentenced without "unreasonable delay", and that the thirty-one (31) month delay in this case was manifestly unreasonable and denied him due process of law. Criminal Rule 32(a) provides that "[s]entence shall be imposed without unreasonable delay. . . . ." This rule parallels Federal Rule of Criminal Procedure 32(a) which has been interpreted as intended to benefit the accused as well as encourage the efficient administration of justice. See *Pratt v. United States*, 70 U.S.App.D.C. 7, 10, 102 F.2d 275, 278 (D.C. Cir.1939). We share this interpretation, however, we find that Criminal Rule 32(a) creates no rights not contained in the speedy trial clause. Therefore, we need not address this as a separate issue.

**5.** *Brady v. Superintendent, Anne Arundel County Detention Center*, 443 F.2d 1307, 1310 (4th Cir. 1971); *Erbe v. State*, 350 A.2d 640, 642 (Md.1965); *State v. Fennell*, 542 P.2d 686, 694 (Kan.1975).

**6.** *United States v. Campbell*, 531 F.2d 1333, 1335–1336 (5th Cir. 1976); *Juarez-Casares v. United States*, 496 F.2d 190, 192 (5th Cir. 1974); *Welsh v. United States*, 348 F.2d 885, 886–887 (6th Cir. 1965).

**7.** *State v. Lammert*, 540 P.2d 466, 469 (Wash. App.1975).

**8.** See *Rutherford v. State*, 486 P.2d 946 (Alaska 1971).

(3) Minimize anxiety and concern accompanying public accusation which might chill the accused's free speech or association with the unpopular causes;

(4) Impair the accused's ability to present a defense due to death or unavailability of witnesses or dulled memories, etc.;

(5) Minimize the possibility that the accused, while on bail pending trial or appeal may commit another dangerous crime;

(6) Minimize delays which might adversely affect the government's ability to prosecute the case;

(7) Penalize official abuse or lawlessness, and encourage the fair and expeditious administration of justice.

Of these seven enumerated considerations, all but the first and the sixth are applicable by analogy to sentencing delays. Sentencing delays may cause undue and oppressive incarceration. Should the defendant be unable to make bail, prolonged imprisonment pending sentencing may be compensable by credit against time served; however, this remedy does little good to the person whose conviction is flatly overturned on appeal. Until sentence is imposed the defendant may not apply for pardon, commutation or reduction of sentence. Also, prompt sentencing may reduce the opportunity for delays designed to chill the legitimate exercise of First Amendment freedoms by unpopular defendants.[9] Witnesses may become unavailable should re-trial be necessary, or in support of a defendant's plea for a lesser sentence. Finally, the public retains an in-terest in prompt and certain punishment for criminal offenses, both to minimize the possibility of further criminal activity by the accused while released on bail pending sentence, and to aid the deterrent effect of penal sanctions.[10] Although this list is not exhaustive it points up the need to extend the constitutional guarantee of a speedy trial through imposition of sentence.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court suggested a multi-faceted balancing test for assessing speedy trial claims. Four factors were suggested: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Regarding the application of this test, the court commented:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. (footnotes omitted)

407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. Although *Barker* was a case where the delay was in the trial rather than in sentencing, the factors enumerated are relevant to sentencing delays and it is appropriate to consider them here.[11]

In this case sentencing was delayed approximately thirty-one (31) months. This delay is sufficiently long to warrant further inquiry.[12] The record indicates our man-

---

**9.** *Cf. Hanby v. State*, 479 P.2d 486, 490 (Alaska 1970) (Criminal prosecution under inapplicable statute may be used to chill legitimate but unpopular free speech).

**10.** *Rutherford v. State, supra* note 8 at 947 n. 4.

**11.** This same approach was used in *Erbe v. State, supra* note 5; *State v. Fennell, supra* note 5; and *United States v. Campbell, supra* note 6.

**12.** The court in *Barker v. Wingo, supra*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 stated:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

date ordering re-sentencing was issued on April 23, 1974. Re-sentencing was scheduled for May 24, 1974, but Gonzales did not appear because he was incarcerated in Washington. On June 10, 1974, a bench warrant was issued to have him returned to Alaska for re-sentencing but the District Attorney's office failed to take action on the warrant. Gonzales voluntarily returned to Alaska during the summer of 1975 following his release from jail. He did not notify Alaska law enforcement officials as he was required to do by the trial court's bail order of May 23, 1973.[13] On August 12, 1976, Gonzales was re-arrested in Fairbanks and charged with possession of heroin. When the District Attorney's office learned of his re-arrest it obtained a bench warrant to secure his return to Anchorage for resentencing. On September 22, 1976, Gonzales appeared and made an objection to re-sentencing because of the delay. The trial court granted a stay to allow time for briefing, re-scheduled sentencing, and ordered an updated presentence report. Gonzales' subsequent motion to dismiss based on the delay in re-sentencing was denied, and on November 16, 1976, he was re-sentenced to serve a term of ten (10) years imprisonment, against which he was given credit for time served for the period he was incarcerated in Washington.[14]

Gonzales contends that the reason for the delay in re-sentencing was entirely due to the State's failure to obtain an appropriate writ to have him returned from Washington to Anchorage for immediate re-sentencing. While it is true that the State was not diligent, Gonzales was not free from fault. The court's bail order of May 23, 1973, required him to notify law enforcement officials if he returned to Alaska. Had he done so, it is likely that he would have been sentenced when he initially re-

turned in 1975. Thus, half the delay in re-sentencing was due to Gonzales' own fault. The remaining delay, while attributable to the State, was caused by negligence, as there is no suggestion of improper motives.

In *Barker* the Supreme Court suggested that different weight should be given to different reasons for delay and suggested that delays caused by inadvertence were neutral in character and should not be weighed as heavily against the State as deliberate delays. Although we recognize the State's obligation to prosecute this case, we must consider the delay here in light of its neutral cause and Gonzales' contributing conduct.

■ We next consider Gonzales' failure to affirmatively demand prompt re-sentencing. In *Glasgow v. State*, 469 P.2d 682, 686 (Alaska 1970), we held that the failure of a defendant to demand a speedy trial should not be dispositive of his right to a speedy trial. Our decision in *Glasgow* in 1970 is consistent with *Barker* decided in 1972, where the court also rejected

> the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.

407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–116. Both *Barker* and *Glasgow* recognize that the absence of a demand by the defendant, while not dispositive, should be given weight in evaluating his speedy trial claim. In the instant case Gonzales made no demand for prompt re-sentencing. He

---

**13.** The court released Gonzales on bail pending appeal on the following condition:

THE COURT: I will release him to go to Seattle and to take the job with the understanding that he stays in the Seattle area. . . .

COUNSEL: There's also one question, if he should be able to make the bond and go to Seattle is it okay if he returns to Anchorage?

THE COURT: No, not without permission of the court. I don't want him running a courier service here. He's got to advise . . . law enforcement authorities that he's coming and that he's leaving . . . .

**14.** The prosecution requested that Gonzales' sentence be so credited. Credit was not required. AS 11.05.040(a).

had, at all relevant times, attorneys representing him and there is no claim that they were incompetent. If Gonzales had actually desired prompt re-sentencing his attorneys could undoubtedly have obtained it for him. We do not give great weight to his failure to assert his right to a speedy sentencing as an independent factor because the primary burden is on the courts and the prosecutors to ensure compliance with speedy trial rights.[15] We regard Gonzales' failure to demand prompt re-sentencing as primarily relevant to our consideration of one aspect of his claim of actual prejudice, the fourth factor identified in *Barker*.

■ Gonzales makes three claims of actual prejudice. He was indicted for one count of possession and two counts of sale of heroin prior to re-sentencing.[16] He contends, first, that the sentencing court considered these indictments in passing sentence. We have held that indictments as such should not be considered in sentencing. *Waters v. State*, 483 P.2d 199, 203 (Alaska 1971). Here, the sentencing court expressly stated that it was not considering the indictments. We see no reason not to accept the court's statement. Moreover, in the information before the court was a report from Gonzales' parole officer that he had searched Gonzales and found him to be in possession of heroin.[17] This report could properly have been considered by the court in passing sentence. *Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977). We do not find that consideration of information made available due to delays in resentencing to be *per se* prejudicial.[18] This is true because favorable as well as unfavorable intervening facts might have been considered. For

example, the court might have considered testimony regarding Gonzales' abstention from use of illegal drugs as favorable evidence in re-sentencing.

Gonzales' second claim of prejudice is that the re-sentencing delay caused him to suffer strong anxiety. We find no proof in the record to support this claim, and his failure to request prompt re-sentencing is evidence that any anxiety he suffered was of tolerable proportions.

Lastly, Gonzales argues that a potential character witness whom he intended to call to testify at re-sentencing died during the intervening period of delay. At oral argument Gonzales' counsel acknowledged that the now unavailable character witness did not testify at the original sentencing proceedings, although he was then able to do so. For this reason we find it difficult to give weight to this claim of prejudice.[19]

■ Considering all of the foregoing, we conclude that the delay was not so long, when its causes are considered, that it amounted to a violation of Gonzales' right to a speedy trial. Further, Gonzales' failure to request prompt re-sentencing, and the absence of any real prejudice, do not make worse the fact of the delay itself. We therefore conclude that there has been no speedy trial violation.

We turn now to the sentence appeal. Gonzales, a drug addict, was convicted of selling $40 worth of heroin to another addict.[20] He was re-sentenced to serve ten (10) years in prison and contends that his sentence is excessive.

15. *Peterkin v. State*, 543 P.2d 418, 422 (Alaska 1975); *Rutherford v. State, supra* note 8 at 950.

16. The possession indictment is Case No. 76–169 Cr. and the sale indictment is Case No. 76–121 Cr., both in the Fourth Judicial District. Gonzales was convicted in these cases subsequent to re-sentencing and both are pending appeal (Supreme Court file numbers 3397 and 3348 respectively).

17. The search led to the indictment in Case No. 76–169 Cr. *supra* note 16.

18. For the reasons stated herein we do not agree with *Juarez-Casares v. United States, supra* note 6.

19. *Cf. State v. Bollander*, 112 Ariz. 35, 537 P.2d 22, 25 (1975) (no prejudice where witness who did not testify at first trial was allegedly unavailable for re-trial).

20. The record is unclear whether Gonzales, like the defendant in *Huff v. State*, 568 P.2d 1014, 1020 (Alaska 1977), sold drugs only to "feed his habit."

■ Gonzales, now thirty-seven (37) years old, had one conviction prior to his conviction in this case. The prior offense arose out of an attempt by Gonzales to smuggle a small amount of heroin to his wife in prison and was committed on April 15, 1972. However, Gonzales was not convicted of this offense until November 2, 1972, more than three (3) months after he sold the drugs in the present case. AS 17.10.200 prescribes as the term of imprisonment for sale of narcotic drugs not less than two (2) nor more than ten (10) years for a first offense, and not less than ten (10) years nor more than twenty (20) years for a second offense or for a first offense where the offender has previously been convicted in another state of an offense relating to narcotic drugs.[21] At Gonzales' initial sentencing the court considered this to be a second offense carrying a minimum term of not less than ten (10) years. This assumption was unchanged at the time Gonzales was resentenced. We hold that it was error.

The stepped-up penalties of AS 17.10.200(a) only apply where there has been a conviction prior to the commission of the violation charged. The obvious purpose of the increased penalties prescribed by the statute is the same as that underlying habitual criminal statutes: persistent offenders should be subject to greater sanctions than those who have been convicted only once. In *State v. Carlson*, 560 P.2d 26 (Alaska 1977), we held that a second offense may be considered as such for the purposes of a habitual criminal statute only if it is preceded by a conviction of the first offense. It is the failure of the defendant to respond to the sanctions imposed following the first offense which justifies enhanced penalties for a second offense. "[W]hen a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is then reasonable to subject him to harsher sanctions." *Id.* at 30.

The fact that the sentencing court mistakenly believed that ten (10) years was the minimum sentence prescribed rather than the maximum is not dispositive on the question whether a ten (10) year sentence was inappropriate for Gonzales. However, it is a mistake which requires resentencing. As we said in a similar situation in *Donlun v. State*, 527 P.2d 472, 474 (Alaska 1974):

> The fact that the sentence did not exceed the maximum allowed . . . .—10 years—is of no consequence, for if the sentencing court had believed 10 years, rather than 20 years, to be the maximum possible sentence, it might well have imposed a more lenient sentence. We therefore believe the appellant should be resentenced.

Since the record before the sentencing court on remand will be different from that which was previously before the court, we decline to express our view as to whether Gonzales' ten (10) year sentence was excessive.

REMANDED FOR RE–SENTENCING.