James D. WARD, Appellant,

v.

STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, Appellee.

State of Alaska, Department of Public Safety, Appellant,

v.

Michael E. BOLES, Appellee.

Nos. S–14042, S–14058.

Supreme Court of Alaska.

Nov. 16, 2012.

Louis James Menendez, Law Office of Louis J. Menendez, Juneau, and Kirsten Swanson and Marcia E. Holland, Law Office of Kirsten Swanson, Juneau, for Appellant Ward and Appellee Boles.

John J. Novak, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellant and Appellee State of Alaska, Department of Public Safety.

Before FABE, WINFREE, and STOWERS, Justices, and EASTAUGH, Senior Justice.*

* Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

*OPINION*

EASTAUGH, Senior Justice.

## I. INTRODUCTION

The Alaska Sex Offender Registration Act (ASORA) requires a person "convicted of ... two or more sex offenses" to register for life as a sex offender.[1] The question raised in these two consolidated appeals is whether this provision applies to a person convicted in a single proceeding of two (or more) sex offenses. James Ward was convicted of two sex offenses in a single criminal proceeding. In a separate and unrelated single proceeding, Michael Boles was also convicted of two sex offenses. They argue here that the pertinent statute, AS 12.63.020(a)(1)(B), is ambiguous, because it can be read to require convictions in more than one proceeding. They therefore reason that the rule of lenity requires that the ambiguity be resolved in their favor and thus that the statute be read to require them to register for 15 years, not life. They assert that the Department of Public Safety, in requiring them to register for life, misread the statute. The men filed separate administrative appeals, which were assigned to two different superior court judges. One judge, reasoning that the statute is unambiguous, affirmed the Department's ruling regarding Ward. The other judge, reasoning that the statute is ambiguous and must therefore be read favorably to offenders, reversed the Department's ruling regarding Boles.

We hold that the Department did not err. We conclude that the statute, in requiring persons "convicted of ... two or more sex offenses" to register for life, is unambiguous and cannot reasonably be read to condition lifetime registration on two or more separate convictions for sex offenses, or on any sequential or chronological separation between convictions. We therefore affirm the superior court order that affirmed the Department's decision regarding Ward and reverse the superior court order that reversed the Department's decision regarding Boles.

1. AS 12.63.020(a)(1)(B).

## II. FACTS AND PROCEEDINGS

### A. *Ward v. Department of Public Safety*

A single indictment charged James D. Ward with committing multiple sex offenses against two different victims, A.G. and C.B., in January 1995. A jury convicted him of one count of sexual abuse of a minor in the second degree as to the first victim and one count of attempted sexual abuse of a minor in the third degree as to the second victim; a single judgment was entered against him on both counts. An amended judgment ultimately found him guilty of two counts of attempted sexual abuse of a minor in the third degree.[2] One count was for the offense against A.G. and one count was for the offense against C.B. The amended judgment sentenced him to two one-year consecutive sentences, and suspended 11 months of each sentence.

After Ward was released from prison, he received a letter from the Department of Public Safety informing him that his two convictions of attempted sexual abuse of a minor required him to register as a sex offender on a quarterly basis, for life. As authority, the letter referred to AS 12.63.020(a)(1).[3] Ward administratively appealed the Department's decision. The Department denied his appeal.

Ward appealed to the superior court in Juneau, arguing that he should not be required to register for life because both convictions resulted from a single criminal prosecution. Superior Court Judge Philip M. Pallenberg affirmed the Department's decision. The superior court first determined that because ASORA was a penal statute, the court was bound to apply the rule of lenity if it found that the provisions at issue were ambiguous. But the superior court ruled that AS 12.63.020(a)(1)(B) unambiguously stated that individuals like Ward were required to register for life, even though he was convicted of two sex offenses in a single proceeding. The court concluded that Ward had failed to make a showing of contrary legislative intent sufficient to overcome the statute's plain language. The court therefore affirmed the Department's decision. Ward appeals that ruling.

### B. *Department of Public Safety v. Boles*

In 2007 Michael E. Boles confessed, under questioning by the Sitka Police Department, that he had sexually abused two children. Boles admitted that he had improperly touched each child at least once, on separate occasions. Boles pleaded guilty to two counts of attempted sexual abuse of a minor.[4] A single judgment adjudged him guilty of both counts, sentenced him to serve five years in state prison on each count, and suspended nine years of the composite sentence.

After his release from prison, the Department informed Boles that because he had been convicted of two sex offenses, he would be required for life to register quarterly as a sex offender. Boles administratively appealed and the Department denied his appeal.[5] Boles then appealed the Department's decision to the superior court in Sitka.

Boles argued in the superior court that ASORA is ambiguous as to whether multiple convictions must be sentenced sequentially in order to trigger lifetime registration, and that the statute should therefore be read to only require him to register for 15 years. The Department countered that there was "no ambiguity and nothing in the language of the statute to suggest a chronological or

2. AS 11.41.438; AS 11.31.100(d)(5).

3. AS 12.63.020 provides in relevant part: "(a) The duty of a sex offender ... to comply with the requirements of AS 12.63.010 for each sex offense ... (1) continues for the lifetime of a sex offender ... convicted of ... (B) two or more sex offenses...."

4. AS 11.41.436(a)(2); AS 11.31.100(d)(4).

5. Before filing his administrative appeal, Boles appealed to the court of appeals, challenging the stated opinion of his sentencing judge, pro tem Superior Court Judge Donald D. Hopwood, that he would be required to register for life. The court of appeals determined that because the sentencing judge had not formally adjudicated the issue, Boles's case was not ripe for review. *Boles v. State*, 210 P.3d 454, 457 (Alaska App. 2009). The court of appeals concluded that Boles would have the option of filing an administrative appeal if the Department determined that he was required to register for life. *Id.*

sequential component to the two-conviction lifetime registration rule." Considering substantially the same arguments that the *Ward* superior court addressed, the *Boles* superior court reached a different result.

Sitka Superior Court Judge David V. George first ruled that AS 12.63.020(a)(1)(B) was ambiguous, as "[n]either the Department nor Boles'[s] interpretation of the statute [was], on its face, unreasonable." After finding little guidance in the statute's legislative history, the superior court construed the statute "so as to provide the most lenient penalty" and therefore ruled that Boles was required to register for 15 years, not life. The Department appeals that ruling.[6]

## III. STANDARD OF REVIEW

■ "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the administrative decision."[7] The "substitution of judgment" test applies to questions of law in which no agency expertise is involved.[8]

## IV. DISCUSSION

### A. The Plain Language Of AS 12.63.020(a)(1)(B) Unambiguously Requires Individuals Convicted Of Two Sex Offenses To Register For Life.

■ The issue in these appeals is whether ASORA unambiguously requires individuals convicted in a single proceeding of two or more sex offenses to register for life as sex offenders. Alaska Statute 12.63.020 provides, in pertinent part: "(a) The duty of a sex offender to [register] . . . (1) continues for the lifetime of a sex offender . . . convicted of . . . (B) two or more sex offenses."[9]

■ Ward and Boles read this statute, as it applies to them, to require multiple sex offense convictions entered at different times. They read the statute as though it were written to require lifetime registration of a sex offender against whom "two or more sex offense convictions have been entered." They would therefore effectively read the statute as though it provided for lifetime registration for a person with "two or more convictions of sex offenses." Ward and Boles do not contend that this is the only possible reading of the statute; they seem to concede that the statute can also be read as the Department proposes. But they argue that since the statute is susceptible to multiple reasonable interpretations, the rule of lenity applies. The rule of lenity provides: "If a statute establishing a penalty is susceptible of more than one meaning, it should be construed so as to provide the most lenient

---

6. This court heard oral argument in these two appeals in October 2011 and ordered supplemental briefing in December 2011. Justice Morgan Christen participated in the October 2011 oral argument, but she was installed as a member of the United States Court of Appeals for the Ninth Circuit before this court could reconfer on these appeals after the supplemental briefing was complete.

7. *Kingik v. State, Dep't of Admin., Div. of Ret. & Benefits*, 239 P.3d 1243, 1247–48 (Alaska 2010) (quoting *McMullen v. Bell*, 128 P.3d 186, 189–90 (Alaska 2006)) (internal brackets omitted).

8. *Id.* at 1248 (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)). The Department argues that its decisions here involved agency expertise, and that we should therefore apply the "reasonable basis test." The result we reach on the merits makes it unnecessary to decide whether the reasonable basis test might apply here.

9. AS 12.63.020(a) provides in relevant part:

> The duty of a sex offender or child kidnapper to comply with the requirements of AS 12.63.010 for each sex offense or child kidnapping
> (1) continues for the lifetime of a sex offender or child kidnapper convicted of
> (A) one aggravated sex offense; or
> (B) two or more sex offenses, two or more child kidnappings, or one sex offense and one child kidnapping; for purposes of this section, a person convicted of indecent exposure before a person under 16 years of age under AS 11.41.460 more than two times has been convicted of two or more sex offenses;
> (2) ends fifteen years following the sex offender's or child kidnapper's unconditional discharge from a conviction for a single sex offense that is not an aggravated sex offense. . . .

penalty." [10]

The two superior courts reached different conclusions regarding the plain language of AS 12.63.020. The *Boles* superior court ruled that neither the Department's interpretation nor Boles's interpretation was unreasonable. The *Ward* superior court ruled that "the plain language of the statute favors the state's position."

Statutory interpretation in Alaska begins with the plain meaning of the statute's text.[11] But "the plain meaning of a statute does not always control its interpretation"; "legislative history can sometimes alter a statute's literal terms."[12] Nonetheless, under our sliding-scale approach to statutory interpretation, a statute's plain language remains significant: "the plainer the language of the statute, the more convincing contrary legislative history must be."[13]

We read the text of AS 12.63.020 as distinguishing between persons convicted of one sex offense and persons convicted of two or more sex offenses. The statute draws the distinction based on the number of offenses, not the number of convictions. If it distinguished based on the number of convictions, we would expect the statute to refer to "convictions," and, in particular, to refer to persons with "two or more convictions of sex offenses." Instead, the statute requires lifetime registration for a sex offender "convicted of ... two or more sex offenses...." Ward and Boles were each convicted of two sex offenses.

The fact that the statute requires an offender to be convicted of multiple sex offenses does not imply a requirement of multiple prosecutions or multiple, separate convictions; it is common for a defendant to be tried for and convicted of several offenses in the same proceeding and by entry of a single judgment. The statute's plain language gives no indication that the term "two or more offenses" instead means "two or more separate arrests, charging instruments, or convictions." On its face, then, AS 12.63.020(a)(1)(B) plainly requires lifetime registration for a person convicted of two or more sex offenses, even if the person was convicted of multiple sex offenses by a single judgment in a single proceeding.

Ward and Boles do not assert that this reading of the statute is unreasonable. They instead argue that their reading is also reasonable, and that the statute is therefore ambiguous. But the text of subsection .020(a)(1)(B) does not contain any language that would impose the additional requirement—that there be multiple proceedings, convictions, or judgments—perceived by Ward and Boles. We therefore conclude that the text of the subsection is not reasonably susceptible to the reading they propose, and that the subsection's text is not ambiguous.

Nor is it rendered ambiguous when read in context of other passages in ASORA. Ward and Boles argue that "[t]he statute does not define the term 'offense,' " or "explain whether the term 'offense' refers to a single felony conviction as opposed to a single criminal prosecution."[14] But ASORA, in AS 12.63.100(6), does define "sex offense." That subsection lists each crime that is a "sex offense" for purposes of ASORA.[15] Therefore, under subsection .020(a)(1)(B), a person "convicted of ... two or more" of the crimes listed in AS 12.63.100(6) is subject to lifetime

---

**10.** *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985) (adopted by *State v. Andrews*, 723 P.2d 85, 86 (Alaska 1986)).

**11.** *City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 458–59 (Alaska 2006).

**12.** *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005).

**13.** *Id.* (internal citation and quotation marks omitted).

**14.** The arguments Ward and Boles make are nearly, but not completely, identical. Because the differences are immaterial, we attribute the arguments to both men. Likewise, when we quote either's arguments, we attribute the quoted passages to both men so long as the quoted language accurately reflects their common arguments.

**15.** AS 12.63.100(6)(A)-(C). Ward was convicted under AS 11.41.438, and Boles was convicted under AS 11.41.436(a)(2); a violation of each statute is defined as a sex offense by AS 12.63.100(6)(C)(i).

registration. Black's Law Dictionary defines "crime" as: "An act that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding." [16] Per the plain language of subsections .100(6) and .020(a)(1)(B), then, an individual who has been convicted of two crimes, each of which constitutes "[a]n act that the law makes punishable," is subject to lifetime registration. Ward and Boles each committed two separate "act[s] that the law makes punishable"; each was convicted of two sex offenses; the plain language of the statute requires each to register for life.

■ ASORA's treatment of certain crimes, including indecent exposure and harassment, confirms that the legislature was capable of framing language containing a chronological or sequential requirement when it wished. Alaska Statute 12.63.100(6)(C)(iv) establishes that the term "sex offense," for purposes of the registration statute, includes a violation of the indecent exposure statute "if the indecent exposure is before a person under sixteen years of age and the offender has a *previous* conviction for that offense." [17] Likewise, subsection .100(6)(C)(viii) provides that harassment in the first degree, when committed by means of offensive contact with "another person's genitals, buttocks, or female breast," [18] is a sex offense if "the offender has a *previous* conviction for that offense." [19] We follow the general rule that "[w]henever possible, each part or section of a statute should be construed with every other part or section, so as to produce a harmonious whole." [20] Applying this rule, subsections .100(6)(C)(iv) and (viii) demonstrate that, as the Department argues, the legislature knew how to include temporal requirements within ASORA when it intended to do so. The legislature's specific directive that only those individuals with "previous" convictions for certain offenses would be subject to sex offender status demonstrates that it did not intend to impose an equivalent requirement for those convicted of different sex offenses.

In short, the plain language of AS 12.63.020(a)(1)(B) unambiguously requires individuals convicted of two or more of the offenses Ward and Boles committed to register for life, and other provisions of ASORA confirm that this result was intended by the legislature. Ward and Boles's reading is not permitted by the provision's plain language. This does not end our analysis; we now consider the statute's legislative history. But, under our sliding-scale approach to statutory interpretation, "the plainer the language of the statute, the more convincing contrary legislative history must be." [21]

## B. ASORA's Legislative History Does Not Clearly Establish The Purpose Underlying The "Two Or More Offenses" Provision.

■ Ward and Boles argue that ASORA's legislative history "strongly suggests that the legislature [only intended] repeat offenders" to have to register for life. They acknowledge that legislators were presented with "information that ... there was little hope of rehabilitation for sexual offenders," causing "many in the legislature" to support a lifetime registration requirement for all sex offenders. Thus, Ward and Boles argue that the legislature's decision to impose lifetime registration on persons with two or more non-aggravated offenses, but not on persons with a single non-aggravated offense, is evidence of a legislative intent to encourage rehabilitation. They identify an instance in which a legislator discussing ASORA used the term "repeat offenders" and argue that "the essence of the discussions before the legislature was that a person who was convicted two or more times ... posed the danger that the lifetime registration requirement was intended to protect against."

---

16. BLACK'S LAW DICTIONARY 427 (9th ed. 2009). The term "crime" is synonymous, according to Black's, with the term "offense." *Id.*

17. Emphasis added.

18. AS 11.61.118(a)(2).

19. AS 12.63.100(6)(C)(iv) (emphasis added).

20. *Forest v. Safeway Stores, Inc.,* 830 P.2d 778, 781 (Alaska 1992).

21. *Chokwak v. Worley,* 912 P.2d 1248, 1251 (Alaska 1996).

The Department disagrees; it argues that "there is nothing in the legislative history of ASORA indicating that the legislature intended to impose a sequential requirement." According to the Department, "ASORA's provision for lifetime registration reflects the legislature's judgment that a person who has committed multiple sex offenses is more likely to reoffend than a person who has committed only a single, isolated offense." In support, the Department identifies testimony about sex offender recidivism and argues that ASORA was not enacted for rehabilitative purposes. The Department concludes that because "[g]iving offenders a second chance is irrelevant" to ASORA's goals, the legislature did not intend to create a sequential requirement.

The superior court in *Ward* determined that "the legislative history gives little or no indication that the legislature thought about the question of whether multiple convictions need to occur sequentially to trigger lifetime registration." The superior court in *Boles* determined that the hearing testimony identified by the parties was "opposing" and could be read as supporting either interpretation of ASORA.

### 1. Enactment of the "two or more offenses" provision

House Bill 69, which later became ASORA, was discussed in committee, revised in subcommittee, and amended before its passage in 1994.[22] As noted by the parties, a great deal of committee discussion and testimony related to sex offender recidivism. Over the course of several hearings, legislators repeatedly heard the bill's supporters testify that sex offenders often could not be rehabilitated, and that registration served important deterrence and public safety functions.[23] This testimony appears to have significantly influenced the legislature. The official "Legislative Findings" prefacing ASORA read, in part: "(1) sex offenders pose a high risk of reoffending after release from custody; (2) protecting the public from sex offenders is a primary government interest...."[24] The Department relies on this evidence to argue that the legislature determined "lifetime registration is appropriate for offenders convicted of more than one offense since rehabilitation of all sex offenders is highly unlikely and even more so in cases where an offender commits more than one offense."

Boles and Ward assert that the legislature's unwillingness to impose lifetime registration on all sex offenders reflects a rehabilitative intent. In its early drafts, H.B. 69 did not include a lifetime registration requirement.[25] But during committee hearings, legislators advocated for a lifetime registration requirement and rejected an amended bill providing for longer, but not lifetime, registration periods.[26] In response, an assistant attorney general expressed some concern during a committee hearing that a lifetime registration requirement might present legal issues relating to "the constitutionally required sentencing goal of rehabilitation of an

22. Ch. 41, SLA 1994.

23. Minutes, Sen. Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #209 (Apr. 14, 1993) (director of Department of Public Safety's domestic violence branch testified to "high likelihood of recidivism"); Minutes, House Fin. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess. (Mar. 29, 1993) (legislator noted that "supporters of the legislation feel that sex offenders have a high recidivism rate" and that "[t]he legislation is designed as a deterrent"); Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #236 (Feb. 26, 1993) (citizen testified that "there was no proof that sex offenders could be cured"); Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #250, 283, 320 (Feb. 10, 1993) (commissioner of Department of Corrections testified that he had never come across a rehabilitated pedophile); Minutes, House State Affairs Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #400 (Feb. 2, 1993) (representative from domestic violence organization discussed high rates of recidivism).

24. Ch. 41, § 1, SLA 1994.

25. *See, e.g.*, Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #000, 022 (Feb. 10, 1993) (committee chairman asked sponsor why bill did not provide for lifetime registration).

26. Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., #352, 391 (Feb. 24, 1993) (legislator noted, in response to draft bill with maximum 20–year registration, that committee had "requested a lifetime registration requirement").

offender."[27] Legislators elicited additional testimony from the assistant attorney general, who, noting that the definition of "sex offender" included those convicted of some "fairly 'minor' sex offenses," was concerned "the court system could view a lifetime registration requirement as inconsistent with rehabilitation of 'non-classic' sex offenders."[28]

Legislators favoring lifetime registration then inquired whether the laws of other states had similar provisions and, if so, whether those laws had survived constitutional challenge.[29] After learning that Washington's tiered registration system had survived an appellate challenge, the House Judiciary Committee asked H.B. 69's sponsor to "break down its registration requirements in a manner similar to the [S]tate of Washington."[30] The bill was thereafter revised to require lifetime registration for serious sex offenders, but not for multiple sex offenders.[31] One month later, a subcommittee of the House Finance Committee revised the bill again to create the "two or more offenses" provision at issue in these appeals.[32]

This evidence of legislative intent is conflicting. Committee members heard a great deal of testimony indicating that sex offenders could not be rehabilitated, and the legislative findings accompanying ASORA demonstrate that concerns about recidivism and public safety were the primary impetus for the law's passage.[33] But the legislature created a tiered registration requirement, perhaps in response to concerns that lifetime registration for all sex offenders might violate "the constitutionally required sentencing goal of rehabilitation."[34] There is no evidence that the "two or more offenses" provision was also drafted in response to any constitutional or other concerns that may have driven the initial creation of a tiered registration requirement.[35] This evidence of legislative intent is therefore inconclusive. It does not imply any intention to impose a requirement of sequential convictions or any purpose to be served by such a requirement, and therefore does not justify departing from the statute's plain meaning.

### 2. Discussion of repeat offenders

Ward and Boles also argue that legislators repeatedly mentioned "repeat offenders" during committee discussions; they contend that this proves the "two or more offenses" provision was only intended to apply to those who reoffend after being given a chance to reform. But the legislative history relied upon by Ward and Boles uses the term "re-

**27.** Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., # 146 (Feb. 10, 1993). The assistant attorney general who made these remarks was likely referring to article I, section 12 of the Alaska Constitution, which provides: "Criminal administration shall be based upon ... the principle of reformation."

**28.** Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., # 671 (Feb. 24, 1993).

**29.** *Id.* at # 717–75.

**30.** *Id.* at # 759.

**31.** Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., # 112 (Feb. 26, 1993). The draft presented on February 26 provided for "a lifetime registration requirement for offenders convicted of unclassified or class A felony sex offenses, a 20–year registration requirement for offenders convicted of class B or class C felony sex offenses, and a 10–year registration requirement for offenders convicted of a class A misdemeanor sex offense." *Id.*

**32.** Minutes, House Fin. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., (Mar. 29, 1993). This version of the bill, which passed the House and Senate, was not identical to the provision we are now considering. The relevant provision of the bill that originally passed the legislature read: "(a) the duty of a sex offender [to register] for each sex offense (1) continues for the lifetime of a sex offender convicted of two or more sex offenses; (2) ends fifteen years following the sex offender's unconditional discharge from a conviction for a single sex offense." Ch. 41, § 4, SLA 1994. In 1998 ASORA was amended to distinguish between aggravated and non-aggravated offenses, and to address indecent exposure. Chs. 81, 106, SLA 1998. The legislative history underlying the 1998 amendments provides no additional insight into the "two or more offenses" provision.

**33.** *See* Ch. 41, § 1, SLA 1994 ("[S]ex offenders pose a high risk of reoffending after release from custody....").

**34.** Minutes, House Jud. Comm. Hearing on H.B. 69, 18th Leg., 1st Sess., # 146 (Feb. 10, 1993).

**35.** There are no records from the subcommittee that drafted the "two or more offenses" provision.

peat offenders" only twice,[36] and only one of these references is relevant to our analysis.[37] In a hearing before the Senate Judiciary Committee on April 14, 1993, after the bill had been amended by including a graduated registration requirement, Senator George Jacko asked an aide to the bill's sponsor about the registration requirement for "repeat offenders":

> Senator Jacko: Is this legislation primarily focused on repeat offenders, or does it differentiate between repeat offenders versus say, someone who . . . .
>
> Doug Wooliver: [Y]es. The differentiation [ ] between repeat offenders and one-time offenders is in the link to the registration requirement. For a person with only one conviction of a sex offense (and these are all felony sex offenses) for one conviction, the registration requirement is 15 years. For someone with multiple offenses, the registration is for life. And there are currently eight other states that have a lifetime registration requirement.[38]

This exchange is vague. It is possible that Senator Jacko was asking whether the statute differentiated between individuals who had been given the opportunity to be rehabilitated and those who were merely convicted of two sex offenses. Indeed, Ward and Boles suggest that the senator's reference to "repeat offenders" is evidence of such a distinction. But the plain meaning of that term, and of its synonym "recidivist," provides no indication that the senator was inquiring about whether the statute drew such a distinction.

The term "repeat offender," which Black's Law Dictionary defines as "[a] person who has been convicted of a crime more than once," does not imply the refusal or failure to reform in the face of punishment.[39] For example, a person convicted in two different proceedings of different sex offenses would satisfy this definition of "repeat offender" even if the offenses were committed contemporaneously and the judgments were entered in a sequence that gave no opportunity for rehabilitation. And in any event, the witness also stated that a person with "multiple offenses" must register for life.[40] Ward and Boles had multiple offenses. The distinction advocated by Ward and Boles is likewise not found in the definition of "recidivist," which is synonymous with "repeat offender" and which is defined as "[o]ne who has been convicted of multiple criminal offenses."[41] A serial offender, who commits many sex offenses over the course of years before finally being convicted, would be considered a repeat offender or recidivist. We think it highly unlikely that the legislature meant to allow such an individual to avoid lifetime registration merely because he evaded prosecution and conviction while committing multiple sex offenses over a long period. The text of the provision closely tracks the definition of repeat offender, and the senator's question thus adds little to our analysis. Even assuming the senator was inquiring whether the provision gave offenders the opportunity to reform before imposing lifetime registration, the witness's response provides little evidence about whether this was the drafters' intent. The exchange is not sufficient to rebut the plain language of AS 12.63.020(a).

**36.** Ward and Boles cite to the minutes of hearings held on February 24 and March 29, 1993, as additional instances in which legislators "focused on 'repeat offenders,'" but that term is absent from the record of both hearings.

**37.** Although the term "repeat offender" was used by Liz Dodd, a representative of the ACLU, during one hearing, her use of the term is not relevant. Dodd's point in using the term was to protest H.B. 69's assumption that many offenders should be required to register at all; she argued that they were being treated as though they would inevitably reoffend, and contended that in fact many sex offenders were capable of rehabilitation. Testimony of Liz Dodd at 57:30–1:00:00, Hearing on H.B. 69 Before the Sen.

Judiciary Comm., 18th Leg., 1st Sess. (Apr. 14, 1993). The legislature was apparently unpersuaded by her testimony concerning offenders' rehabilitation prospects.

**38.** Testimony of Doug Wooliver at 49:50–50:30, Hearing on H.B. 69 Before the Sen. Judiciary Comm., 18th Leg., 1st Sess. (Apr. 14, 1993).

**39.** BLACK'S LAW DICTIONARY 1186 (9th ed. 2009).

**40.** Testimony of Doug Wooliver at 49:50–50:30, Hearing on H.B. 69 Before the Sen. Judiciary Comm., 18th Leg., 1st Sess. (Apr. 14, 1993).

**41.** BLACK'S LAW DICTIONARY 1384 (9th ed. 2009).

### 3. Other portions of ASORA's legislative history

Ward and Boles also argue that the following explanation of ASORA's intended retroactive applications during a committee hearing supports their interpretation of the statute:

> (Unknown committee member): The ten year retroactive, is that to all registration, or just for the ones that would expire after 15 years?

> Mr. Wooliver: If you have been convicted of two or more sex offenses, then it doesn't matter when those sex offenses occurred. So if you were convicted once in 1970 and once in 1980 of sex offenses, you would still be required to register for life.[42]

This testimony explained that ASORA was intended to be indefinitely retroactive for individuals convicted of two or more sex offenses.

Wooliver's testimony has little bearing on the interpretive issue here; the testimony does not support Ward and Boles's interpretation of the statute. In discussing "two or more sex offenses," Wooliver chose to provide an example in which an offender was "convicted once" of a sex offense and then convicted again of another sex offense ten years later.[43] Wooliver used this illustration to explain ASORA's retroactive effect; it was not offered to explain the term "two or more offenses." No party disputes that individuals convicted of two sex offenses in separate prosecutions must register for life, and Wooliver's use of this example is not probative evidence that the legislature intended a meaning that would be contrary to the statute's plain language.

The most relevant portion of ASORA's legislative history also does not provide a clear expression of legislative intent. After the "two or more offenses" provision was added to H.B. 69, Representative Gene Therriault, a member of the subcommittee that had revised the draft bill, explained the changes: "We've changed the duty to register now so that you have to register for life only if you've been convicted of two or more sex offenses. And all other sex offenders will be required to register for a period of 15 years following unconditional discharge." [44] Representative Therriault's explanation of the "two or more offenses" provision is consistent with the statute's plain language, and does not support the interpretation proposed by Ward and Boles.

ASORA's 1993 legislative history provides no insight into the meaning of the provision at issue here. It provides no evidence that the legislature intended the "two or more offenses" language to include a chronological requirement. And the occasional comments about "repeat offenders" are not inconsistent with the plain meaning of the statute's words. ASORA's legislative history does not contain evidence of a contrary legislative purpose sufficient to justify a departure from the statute's plain language.[45]

### 4. Legislative history underlying 1998 amendments to ASORA

We have also reviewed the legislative history of amendments made to ASORA in 1998.[46] The amendments distinguished between aggravated and non-aggravated sex offenses, but they did not alter the relevant language of the provision—AS 12.63.020(a)(1)(B)—at issue in these appeals.[47] Nonetheless, during a 1998 legislative committee hearing, an assistant attorney general directly discussed AS 12.63.020(a)(1)(B) in a manner that might be read to support Ward and Boles's interpretation of the provision. In response to questioning by members of the House Judiciary

**42.** Testimony of Doug Wooliver at 25:00–25:35, Hearing on H.B. 69 Before the House Finance Comm., 18th Leg., 1st Sess. (Mar. 29, 1993).

**43.** *Id.*

**44.** Testimony of Representative Therriault at 5:25–5:40, Hearing on H.B. 69 Before the House Finance Comm., 18th Leg., 1st Sess. (Mar. 29, 1993).

**45.** *See Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.,* 110 P.3d 1254, 1258 (Alaska 2005).

**46.** Chs. 81, 106, SLA 1998.

**47.** Ch. 106, § 12, SLA 1998.

Committee, the assistant attorney general explained that she understood ASORA, as originally enacted, to require "recidivous sex offenders to register for life." [48] The summary minutes of the hearing state that the assistant attorney general then informed the committee that "Alaska's approach ... is to treat recidivists who have had a chance to reform but to no avail, as well as people convicted of the most serious offenses, as if they are predators, requiring verification of address every 90 days." [49]

We do not consider testimony given after a statute's passage to be a relevant component of that statute's legislative history.[50] ASORA was enacted in 1994. The comments we discuss here were made in 1998. Testimony given during consideration of amendments to a statute may be relevant to interpreting the specific provisions to be amended,[51] but that is not the situation here: AS 12.63.020(a)(1)(B)'s "two or more offenses" language was not amended in 1998, nor was there any discussion of amending the relevant text at issue here. And although the assistant attorney general was asked to explain the amendments during the committee hearing, her testimony regarding the "two or more offenses" provision was not specifically elicited.[52] In response to a legislator's question about aggravated sexual offenses, the assistant attorney general explained that ASORA already required "recidivous sex offenders to register for life" and that the new bill would require aggravated offenders to do

the same.[53] She was not asked to specifically explain the "two or more offenses" provision; her comments regarding recidivists were made as an aside and do not affect our analysis.[54]

Moreover, the assistant attorney general did not state that persons convicted of two offenses in the same proceeding are *not* required to register for life; she merely noted that recidivists *must* register for life.[55] Her testimony clearly evinces her understanding that those offenders "who have had a chance to reform but to no avail" [56] are required to register for life, but it does not demonstrate that she believed offenders convicted of multiple offenses in a single prosecution were only required to register for 15 years. Given that the assistant attorney general's comments need not necessarily be read to foreclose lifetime registration for offenders like Ward and Boles, they are not conclusive evidence of a contrary legislative intent that would be sufficient to overcome the statute's plain language. Accordingly, we conclude that the legislative history underlying the 1998 amendments provides no basis for departing from the plain meaning of AS 12.63.020(a)(1)(B).

## C. Our Cases Interpreting Sentence–Enhancement Statutes Are Not Probative To Our Interpretation Of ASORA.

Ward and Boles argue that our interpretation of ASORA should be guided by cases

---

48. Minutes, House Jud. Comm. Hearing on H.B. 252, 20th Leg., 2d. Sess., #2261 (Feb. 16, 1998).

49. *Id.* at 2321.

50. *See Marlow v. Municipality of Anchorage*, 889 P.2d 599, 603 n. 2 (1995) (holding that later statements of legislators are not relevant to legislative history); *Dep't of Cmty. & Reg'l Affairs v. Sisters of Providence in Wash.*, 752 P.2d 1012, 1015 (Alaska 1988) (holding that letter written by legislator three years after enactment was irrelevant to legislative history); *see also* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES & STATUTORY CONSTRUCTION § 48:16 (7th ed. 2007) ("[P]ostenactment statements made by a legislator as to legislative intent do not become part of the legislative history of the original enactment.").

51. *See Rogers v. Frito–Lay, Inc.*, 611 F.2d 1074, 1080–81 (5th Cir.1980) (discussing possi-

ble distinction between general irrelevance of post-enactment legislative history and potential relevance of post-enactment legislative history relating to statutory amendment).

52. Minutes, House Jud. Comm., Hearing on H.B. 252, 20th Leg., 2d. Sess., #1888–0672 (Feb. 16, 1998).

53. *Id.* at #2261.

54. *Cf. Nelson v. Municipality of Anchorage*, 267 P.3d 636, 641 (Alaska 2011) (holding attorney's committee testimony may be given weight when related to issue specifically elicited).

55. Minutes, House Jud. Comm., Hearing on H.B. 252, 20th Leg., 2d. Sess., #2321 (Feb. 16, 1998).

56. *Id.*

interpreting other Alaska statutes. They specifically identify Alaska cases in which this court and the Alaska Court of Appeals have interpreted various sentence-enhancement statutes containing "multiple conviction" provisions to mean that offenders must be convicted in separate prosecutions.[57] Boles and Ward argue that this line of authority creates a "general rule" that "a conviction must precede a second conviction before some type of penalty[ ]enhancement is permitted." The Department responds that the statutes considered in the cases cited by Ward and Boles contained language suggesting the necessity of a "previous conviction"; ASORA, the Department argues, contains no such language pertinent to Ward and Boles.

The *Ward* superior court evaluated the sentence-enhancement cases by looking to the language of the statutes at issue in those cases. The superior court read the statutes considered in *State v. Carlson,*[58] *Gonzales v. State,*[59] and *State v. Rastopsoff*[60] and found that each provided for sentence enhancements only "when a defendant was 'previously' convicted of other offenses." The superior court reasoned that "ASORA, by contrast, contains no temporal element as to multiple convictions" and declined to read the sentence-enhancement cases "in isolation from the language of the statutes those courts were interpreting."

The *Boles* superior court determined that the sentence-enhancement cases were "relevant to the construction of the phrase 'two or more sex offenses.'" The court held that ASORA was a penal statute and noted that cases interpreting other penal statutes were relevant to its own analysis. The court then ruled that "[a]pplying *Carlson* to ASORA's 'two or more offenses' provision means that two offenses sentenced at the same time, standing alone, would not result in ... lifetime registration." The *Boles* superior court did not discuss the text of the statutes.

We agree with the superior court in *Ward* that "the general principle set out in *Carlson, Gonzale[s],* and *Rastopsoff* cannot be read in isolation from the language of the statutes those courts were interpreting." Because the sentence-enhancement statutes considered in those cases contained explicit temporal requirements not found in AS 12.63.020(a)(1)(B), the *Carlson* line of cases is irrelevant to the issue presented here.[61] Unlike those statutes, subsection .020(a)(1)(B) contains no language hinting at a requirement of sequential convictions. The term "previously convicted" is absent from subsection .020(a)(1)(B), and there is no indication that "convicted of ... two or more sex offenses" means "convicted and sentenced on two or more separate occasions."[62] Subsection .020(a)(1)(B) is not analogous to the statutes interpreted in the *Carlson* line of cases.

But the *Carlson* line of cases does tend to support the Department's interpretation of ASORA. Alaska courts follow the settled principle of statutory construction that "when a legislature adopts specific statutory language that has previously been interpreted ... in connection with other statutes involving a similar subject matter, the legislature is

---

57. *See Gonzales v. State,* 582 P.2d 630, 636 (Alaska 1978) (interpreting mandatory minimum sentencing provision); *State v. Carlson,* 560 P.2d 26, 30 (Alaska 1977) (interpreting former "habitual criminal" statute); *Smith v. State,* 83 P.3d 12, 15–16 (Alaska App.2004) (interpreting presumptive sentencing statute); *Sawyer v. State,* 663 P.2d 230, 231 (Alaska App.1983) (same); *State v. Rastopsoff,* 659 P.2d 630, 640–41 (Alaska App. 1983) (same).

58. 560 P.2d at 30.

59. 582 P.2d at 636.

60. 659 P.2d at 640.

61. *See Gonzales,* 582 P.2d at 632 n. 2, 636 (interpreting provision with phrase "previously been convicted"); *Carlson,* 560 P.2d at 27 n. 2 (interpreting same phrase as *Gonzales* ); *Wooley v. State,* 221 P.3d 12, 17 (Alaska App.2009) (interpreting language "convicted and sentenced on two or more separate occasions"); *Smith,* 83 P.3d at 15–16 (interpreting phrase "previously been convicted two or more times"); *State v. Andrews,* 707 P.2d 900, 905 (Alaska App.1985), *aff'd State v. Andrews,* 723 P.2d 85, 86 (Alaska 1986) (considering provision that read "convicted of two or more crimes before the judgment on either has been entered"); *Sawyer,* 663 P.2d at 231 (interpreting phrase "previously convicted"); *Rastopsoff,* 659 P.2d at 633–34 (interpreting same statute as *Sawyer* ).

62. *Wooley,* 221 P.3d at 17.

presumed to have intended to adopt the court's interpretation of that language."[63] In these appeals, the opposite may be true: had the legislature intended AS 12.63.020(a)(1)(B) to require sequential convictions when it enacted the text in 1994, we think it is likely it would have adopted language similar to that used in the sentence-enhancement statutes interpreted before 1994 by this court and by the court of appeals. Notably, the legislature *did* use the term "previous conviction" elsewhere in ASORA, when it defined the circumstances under which indecent exposure offenses would be considered sex offenses.[64] The legislature's failure to include equivalent language in AS 12.63.020(a)(1)(B) indicates that it intended ASORA's lifetime registration requirement to apply to offenders like Ward and Boles.

### D. Policy Considerations Do Not Compel The Adoption Of Ward And Boles's Interpretation Of ASORA.

■ Ward and Boles encourage us to "consider what adopting the state's interpretation of the statute might lead to," arguing that it would be inadvisable to require "low risk" offenders to register for life although they do not pose "any danger to the public." Because we have determined that "the language, structure, and legislative history" of AS 12.63.020(a)(1)(B) require Ward and Boles to register for life, we decline to address the policy arguments they advance.[65] When a statute unambiguously requires a certain result, policy arguments advocating for a different result "are better addressed to the legislature."[66] "It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the peo-

ple."[67] But we also note that the "multiple convictions" interpretation they propose would mean that a serial offender charged and convicted in a single proceeding of many sex offenses against many victims would not be required to register for life. We think, given the history of the statute, that could not have been the legislature's intention.

### E. Because AS 12.63.020(a)(1)(B) Is Unambiguous, The Rule Of Lenity Does Not Apply.

■ Ward and Boles argue that we should apply the rule of lenity in interpreting AS 12.63.020(a)(1)(B). The *Ward* superior court determined that because the provision was unambiguous, the rule did not apply to its analysis. The *Boles* superior court determined that the provision was ambiguous and applied the rule of lenity in its process of statutory interpretation.

■ Under the rule of lenity, "[i]f a statute establishing a penalty is susceptible of more than one meaning, it should be construed so as to provide the most lenient penalty."[68] But the rule "comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous."[69] Because the plain language of AS 12.63.020(a)(1)(B) unambiguously requires Ward and Boles to register for life, and because our examination of the statute's legislative history does not reveal a contrary legislative intent, there is no basis for applying the rule of lenity to "provide the most lenient penalty" in these appeals.[70] We therefore do not need to decide whether ASORA is a "penal statute" for the purposes of the rule of lenity.

---

63. *Rastopsoff*, 659 P.2d at 635.

64. AS 12.63.100(6)(C)(iv).

65. *See State v. Saathoff*, 29 P.3d 236, 242 (Alaska 2001) (declining to address policy arguments when language and legislative purpose made statute's meaning clear).

66. *Id.*

67. *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

68. *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985) (adopted by *State v. Andrews*, 723 P.2d 85, 86 (Alaska 1986)).

69. *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App.1991).

70. *Andrews*, 707 P.2d at 907.

### F. Ward And Boles Have Not Raised A Due Process Claim.

Ward and Boles argue that this court should construe ASORA "in a narrow sense in order to avoid ... due process concerns." In support, they cite a case in which the Hawaii Supreme Court held that its sex offender registration statute violated due process.[71] At oral argument, counsel for Ward and Boles clarified that they included these constitutional arguments only to demonstrate the potential consequences of requiring low-risk offenders to register for life; they explicitly acknowledged in oral argument that Ward and Boles have not raised a free-standing constitutional claim before this court.

In *Doe v. State, Department of Public Safety* (*Doe I*) we considered the constitutionality of ASORA as applied to individuals with set-aside convictions.[72] After considering "the potentially destructive practical consequences that flow from registration," we determined that ASORA violated the protected liberty interests of sex offender registrants with set-aside convictions.[73] We held:

> Because ASORA compels affirmative post-discharge conduct under threat of prosecution, because this conduct is equivalent to that often required by criminal judgments, because this sort of conduct could not be compelled absent a criminal adjudication or its equivalent, because the conviction (since set aside) is the event that triggers these duties, and because the requirement impairs one's post-set-aside freedom to be

let alone, we conclude that it violates Doe's liberty interests to require him to register under ASORA.... [74]

Careful review of Ward and Boles's briefs reveals that they do not raise any constitutional challenge apart from their unsuccessful interpretive argument. We have determined that AS 12.63.020(a)(1)(B) unambiguously requires Ward and Boles to register for life, and we have not been asked to consider the statute's constitutionality as applied to individuals convicted of two sex offenses in a single prosecution. It is therefore unnecessary to consider what effect *Doe I* might have, if any.

## V. CONCLUSION

We AFFIRM the order in *Ward* that affirmed the Department's decision that Ward must register for life as a sex offender, REVERSE the order in *Boles* that reversed the Department's decision that Boles must register for life as a sex offender, and REMAND for entry of an order affirming the Department's decision regarding Boles.

CARPENETI, Chief Justice, not participating.

---

71. *State v. Guidry*, 105 Hawai'i 222, 96 P.3d 242, 244 (2004).

72. 92 P.3d 398, 404 (Alaska 2004).

73. *Id.* at 410.

74. *Id.*